## FOUNTAIN *v.* DRAPER.

LIQUOR LAW OF 1873.—*Sixth Section.*—Under the sixth section of the act to regulate the sale of intoxicating liquors (Acts 1873, p. 151), it is unlawful to sell, barter, or give intoxicating liquors to any person in the habit of becoming intoxicated, and such person need not be intoxicated at the time the liquor is furnished.

SAME.—*Twelfth Section.—Suit by Wife for Damages.—What She Must Establish.*—In a suit brought by a wife under the twelfth section of the act to regulate the sale of intoxicating liquors (Acts 1873, p. 151), it is necessary, in order to entitle her to recover, to establish the following: 1. The intoxication of her husband, habitual or otherwise. 2. That she has been injured in person or property, or means of support, in consequence of such intoxication. 3. That the intoxication from which the injury resulted was caused, in whole or in part, by the selling, bartering, or giving of intoxicating liquors to her husband by the defendant.

SAME.—*Liability for Damages.*—Each person who by selling, bartering, or giving intoxicating liquors, contributed in part to the intoxication causing the injury complained of, is liable for the full extent of the injury; and all such persons may be joined, or any one may be sued.

From the Benton Circuit Court.

*R. C. Gregory, W. B. Gregory,* and *R. P. DeHart,* for appellant.

*J. R. Troxell, P. H. Ward, W. H. Graham, R. S. Dwiggins,* and *Z. Dwiggins,* for appellee.

DOWNEY, J.—Suit by the appellee against the appellant. The venue was changed from Jasper county, where the action was commenced, to Benton county, where it was tried. The complaint states the following facts: That the plaintiff is the wife

of William Draper; that she resides with her husband in the town of Remington, in Jasper county, Indiana; that the defendant also resides in said town, and does business there; that his business is and has been for more than a year last past that of saloon keeper; that the defendant kept and still keeps intoxicating liquors for sale in his saloon; that the husband of this plaintiff is in the habit of drinking intoxicating liquors and becoming intoxicated, which was and is well known to the defendant; that in March, 1873, the plaintiff notified the defendant that her husband was in the habit of becoming intoxicated, and notified and requested him not to sell or give her said husband any intoxicating liquor whatever; that the defendant, well knowing from his own personal knowledge, as well as from the notice given to him by the plaintiff, that the husband of plaintiff was in the habit of becoming intoxicated whenever he could procure liquor, and disregarding the notice and request of the plaintiff, did, on the 1st day of March, 1873, and on divers other days and times between that time and the present, sell, barter, and give intoxicating liquors to the said husband of this plaintiff, thereby causing the intoxication of the husband of the plaintiff.

It is further alleged, that the husband of the plaintiff, by reason of said intoxication, caused by the defendant aforesaid, failed to provide for and maintain the plaintiff and her children; that her said husband, by reason of said intoxication, would not and did not work or make any exertion to procure means for the support and maintenance of the plaintiff and her children; that her said husband, by reason of said intoxication caused as aforesaid, squandered and wasted his property and means, not leaving anything for the support and maintenance of the plaintiff and her children; that her said husband, while in a state of intoxication caused by the acts of the defendant as aforesaid, struck, beat, and wounded the plaintiff, and did curse, abuse, beat, and wound her and her children, and used profane and obscene language in the presence and hearing of her and her children, and otherwise abused and ill-treated her and her children; that all of said beating, striking,

wounding, cursing, and other abuse of the plaintiff by her said husband was caused by the aforesaid intoxication; by reason of all of which plaintiff says that she has been damaged in the sum of two thousand dollars; wherefore she demands judgment against said defendant in the sum of two thousand dollars, and all other proper relief.

The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. His demurrer was overruled, and he excepted.

An issue of fact was then formed by a general traverse of the complaint.

This issue was tried by a jury, and there was a verdict for the plaintiff, awarding her damages in the sum of three hundred and twenty-five dollars.

The defendant moved the court for a new trial, for the reasons following:

1. Because the damages are excessive.

2. Because the verdict of the jury is not sustained by the evidence.

3. Because the verdict of the jury is contrary to law.

4. Because the court misdirected the jury in giving them instructions numbered one, two, and three.

These instructions are set out in the written motion. This motion was overruled, as was also a motion in arrest of judgment, and final judgment was rendered for the plaintiff for the amount of the verdict.

The errors assigned are the overruling of the demurrer to the complaint, the refusal to grant a new trial, and overruling the motion in arrest of judgment. The first and last assignments present but one question, that is, as to the sufficiency of the complaint.

Counsel for appellant, in their brief, say the action is brought under sections 8 and 12 of the act—that of February 27th, 1873, Acts 1873, p. 151.

Counsel for appellee state that the action is founded on the twelfth section of the act. We do not perceive that the eighth section has any reference to the case made by the complaint,

and we shall therefore examine the questions with reference to the twelfth section.

The eighth section makes the person selling intoxicating liquor liable to pay a compensation to any person taking care of the intoxicated person.

The twelfth section of the act provides, that " in addition to the remedy and right of action provided for in section 8 of this act, every husband, wife, child, parent, guardian, employer, or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name, severally or jointly, against any person or persons who shall, by selling, bartering, or giving away intoxicating liquors, have caused the intoxication, in whole or in part, of such person," etc.   By the same section, a married woman is given the same right to bring suit and control the same and the amount recovered as an unmarried woman, and it is declared that the suit for damages may be by any appropriate action in any of the courts of the State having competent jurisdiction, and that all such judgments may be enforced without any relief from valuation laws.

The only objection to the complaint, considered with reference to the twelfth section of the act, made by counsel for the appellant, is, that the section has reference to unlawful sales only ; otherwise, it is said, you make the legislature provide a penalty for doing that which they make lawful by a permit. The complaint, it is said, does not show that the sales were unlawful; does not aver that the husband was in a state of intoxication at the time of the sale, barter, or gift.

If it be conceded that the position of counsel is correct in a legal view, still it is incorrect in point of fact, for the sales are shown, by the averments of the complaint, to have been illegal.   It is averred in the complaint, that the defendant was notified, and that he knew of his own knowledge, " that the husband of the plaintiff was in the habit of becoming intoxicated whenever he could procure liquor," and that the defend-

ant sold, bartered, and gave him intoxicating liquors in disregard of the notice and request of the plaintiff.

It was not necessary that the husband of the plaintiff should have been in a state of intoxication when he procured the liquor of the defendant, in order to make the sales, etc., illegal. It was unlawful under the sixth section of the act to sell, barter, or give intoxicating liquors to any person who was in the habit of becoming intoxicated. The court committed no error in overruling the demurrer to the complaint.

We are next to consider the question relating to the overruling of the motion for a new trial. As the sufficiency of the evidence to justify the verdict of the jury is drawn in question, we will set forth the substance of it, on both sides:

Helen M. Draper, the plaintiff, testified, after stating her name, residence, and relation to the action, as follows: William Draper is my husband; I have lived at Remington nearly two years; my husband has lived there nearly that long, clerking in Mr. Bowles' store; we have five children, four girls and one boy; their ages are, boy, fourteen, girls, twelve, eight, five, and two and a half years; I am acquainted with the defendant; he lives at Remington, and keeps a saloon; that has been his business during the last year; my husband was intemperate in March last; he has been more or less intemperate ever since we came to Remington, two years ago; he never struck me but once; that was when he went to whip one of the little girls, and I interfered; he was intoxicated at the time; I visited the defendant's saloon in November last (1872) with Penfield Bowles; I notified the defendant not to sell any liquor to my husband; he said he would not; after the new law came out, I wrote the defendant a note, telling him not to sell my husband any liquor, and that if he did I would avail myself of the provisions of sections 8 and 12 of the law; I sent this note and a copy of the law to the defendant by Mr. Penfield Bowles; he delivered it to him; I do not know of defendant's selling my husband any liquor since the 1st of March; between the 1st of March and the latter part of July, my husband was intoxicated the greater

part of the time; when sober he was a good man, and would do his best; when intoxicated, he would curse and swear and use obscene language in the presence of myself and the children; he usually came home early in March and April last; once he stayed out all night, and once he came home about one o'clock; would come home intoxicated; defendant knew of his habits; I told him.

On cross-examination, she testified that the saloon of the defendant was not the only place in Remington where liquor was sold; there were two drug stores and one other saloon; I heard that Rawlings kept a barrel of liquor; Mr. O'Conner kept the other saloon; Mr. Ford did keep a saloon there till about the middle of July last; my husband was very profane when drunk; he never swore at home when sober; he struck me with his hand; he was whipping one of the little girls, and I interfered; he never hurt me any; he brought some gin and other liquors home to me; I do not know anything about where he got it; they sell liquor at the drug stores for medical purposes; I do not know of any person selling to my husband.

Penfield Bowles testified as follows: I am acquainted with the parties to this suit, and know William Draper; he clerked for me in my store at Remington; I discharged him in October last, about a month ago (the trial was in November, 1873); he was intoxicated once or twice a week from March to July; he is all right when sober; when he is drunk, he uses profane language; I went with Mrs. Draper last fall to the drug stores and saloons and notified them not to sell Draper any liquor; the defendant said he would not; I delivered a note and a copy of the new law to Mr. Fountain for Mrs. Draper in February or March last; in April or May I saw Draper in Fountain's saloon paying for a bottle of gin; I could not say that I have seen Draper drink there since the 1st of March; saw him drink beer there before that time; I tasted of the gin.

On cross-examination, he said: Mrs. Draper is my cousin; saw Draper have the gin, and saw him hand money to Fountain, and inferred from that he was paying for the gin; I think

Fountain knew of Draper's habits; he has been intoxicated in Fountain's place of business; I have taken him out.

Patrick Lully testified that he resided at Remington; that he was acquainted with the parties to the suit, and with William Draper, husband of the plaintiff; that defendant kept a saloon from 1st of February to July; saw Draper drunk in March and April; saw him get beer at Fountain's along in the winter and spring; cannot tell just when it was; supposes he has seen him get a package there since the 27th of February; they were bottles of gin; saw him get it there last winter or fall; they called it soap; I suppose I have seen Draper get beer there five or six times since February; have seen Draper drink beer there when he was intoxicated; I call November, December, January, February, and March winter; I suppose I speak by the weather, not by the months; I know I saw him drink beer there last winter, but I can't tell when; it was in the winter, and, I suppose, as late as February; I never saw him get any gin there since February; I saw him get gin at Bowles' store; it is only guess-work with me when I say February, March, and April; I know it was in April; I was a candidate for marshal, and had to treat, and saw him there; election was first Monday in May; saw Draper get beer there at that time, in April last, and saw him get a bottle of gin there in the same month.

Emma Stewart: Had lived in Draper's family within the last year; have seen him intoxicated several times when there; he came home one night drunk and went up stairs to whip the little girl, who was crying with the toothache; Mrs. Draper interfered; that was last fall, in 1872.

Ruby Babcock: Went to Draper's 1st of last December, and remained there until April; during that time Draper came home drunk two or three times a week; he was abusive and used profane language; he was not abusive in any other way.

Ambrose Ford, on behalf of defendant, testified that he lived in Remington last summer, and kept a saloon there from December to May or June; I know the defendant, and also

William Draper; Draper got liquor most anywhere then; I saw him get a bottle of gin of Mr. O'Conner; I let him have a drink of gin, and was fined for it; I kept gin for sale; they kept it at the drug stores; I have seen Fountain refuse to let Draper have liquor; he told him he would not let any person have liquor who got drunk; have drank gin with Draper at Bowles' store; don't know what kind of gin Draper got of O'Conner; at Bowles' store he got the gin from behind the counter, where he had it in a bottle.

Jared H. Fountain, the defendant, testified as follows: I have lived at Remington about five years; I was notified some time last fall or winter by the plaintiff not to sell liquor to William Draper; Mr. Bowles gave me a note and a copy of the new law; the note was from Mrs. Draper; I sold Draper a bottle of gin some time in the spring; he came in and said he had agreed to get a bottle of gin to take home to his family; that his wife was sick with the ague, and he did not feel well himself, and he had promised to get it for medicine; I believed what he said, and let him have it; he was sober when he got it; I have never sold or furnished any liquor to Draper but that one time since I was notified not to do so; I sold "Imperial Gin;" never sold any "London Dock."

Was this evidence sufficient to justify the verdict of the jury? Under that part of the twelfth section which relates to this action, and which we have already set forth, where the wife sues on account of the intoxication of her husband, she is required to establish the following propositions:

1. The intoxication of her husband, habitual or otherwise.

2. That she has been injured in person or property or means of support in consequence of such intoxication.

3. That the intoxication from which the injury resulted was caused, in whole or in part, by the selling, bartering, or giving intoxicating liquors to her husband by the defendant.

The evidence abundantly establishes the first proposition, that is, the intoxication of the husband. It is sworn to by nearly all the witnesses who testified in the cause.

The evidence in support of the second proposition is not so

clear. The law took effect at its approval, in consequence of an emergency clause, on the 27th day of February, 1873. The action having been authorized by that law, nothing which occurred before the date of its enactment can furnish a cause of action under it. The circumstance of the husband's striking his wife seems to have occurred in the fall of 1872, before the act was passed, according to the testimony of Emma Stewart, who is the only witness fixing a date to that transaction. It does not clearly appear whether the husband was discharged by Bowles on account of his habits of intoxication or not. Bowles says he discharged him in October before the trial, but does not state the reason for so doing. Possibly, it may properly have been inferred by the jury that he was discharged for this reason, as Bowles speaks of him as " all right when sober." He was almost continually intoxicated in the spring and summer of 1873, and we think the wife must have been injured in her means of support and personal comfort and quiet by the waste of his money and time, and his unkind conduct and obscene language.

There is evidence from which the jury might find the truth of the third proposition. It was not necessary that the intoxication of the husband should have been produced solely by the liquors sold, bartered, or given to him by the defendant. It seems clear that others, as well as the defendant, sold liquors to the husband. But this is not material. They might have been joined with the defendant in the action, or he might be sued alone. The statute authorizes the action to be brought severally or jointly against those who sell, barter, or give the liquor. The statute does not contemplate an apportionment of the damages among those who sell the liquors which produce the intoxication. Each one is liable to the full extent of the injury.

Counsel, in their brief, complain of the giving of the following instructions: " That if the husband of the plaintiff was a man who was in the habit of becoming intoxicated, any sale, barter, or gift of intoxicating liquors made to him by the

defendant, to be used by him as a beverage, after the defendant had notice of his habit, would be unlawful, if made during the time charged in the complaint.

" If you find that the plaintiff was injured in her means of support on account of the intoxication of her husband, caused in whole or in part by the defendant's unlawfully selling, bartering, or giving him intoxicating liquors, you may give her such damages for this injury as you may think from the evidence will be a reasonable compensation to her for the same."

Counsel say : " The ground we take is, that the eighth and twelfth sections must be read together, for the reason that the twelfth section provides, that ' in addition to the remedy and right of action provided for in section 8 of this act, every husband, wife,' etc. The ' sale ' is the thing provided against, and the twelfth section does not enlarge the thing provided against, by providing against whom the action may be brought." The position of counsel, as we understand it, is, that the instructions of the court are wrong, because they inform the jury that " evidence of a bartering or giving of the liquor will sustain the case, as well as evidence of a selling."

We have already said, in speaking of the complaint, that we do not think the case depends upon the eighth section of the act to any extent. We think the action in this case is authorized by the twelfth section alone. That section, as we have seen, relates to intoxication produced by liquors obtained by " selling, bartering, or giving away." There is nothing in the objection made to the instructions.

We cannot say that the damages are excessive.

The judgment is affirmed, with costs.