## KRACH ET AL. *v.* HEILMAN.

LIQUOR LAW.—*Act of 1873.*—*Section 8.*—*Compensation for Taking Care of Intoxicated Person.*—Section 8 of the act of February 27th, 1873, Acts 1873, Reg. Sess. 151, which provided that any person who should, by

Krach *et al. v.* Heilman.

the sale of intoxicating liquor, cause the intoxication of another, should be liable "to pay a reasonable compensation to any person who may take charge of and provide for such intoxicated person," must be construed as authorizing a recovery only for the time during which such person may have remained intoxicated.

SAME.—*Section 12.—Injury in Consequence of Intoxication.—Proximate Cause.*— Where a person, by selling intoxicating liquor to another, caused the intoxication of the latter, so that he became insensible and unable to take care of himself, and while in that condition, in going home, lying down in his wagon in consequence of his intoxication, he received an injury from a barrel which was in said wagon, and, if he had not been intoxicated, he would not have received said injury, from which he died;

*Held*, in an action by his widow, who by his death was injured in her means of support, against said seller, that she was not injured "in consequence of the intoxication," and was therefore not entitled to recover under section 12 of said act of 1873.

From the Vanderburgh Circuit Court.

*A. Iglehart, B. Hynes* and *J. E. Iglehart,* for appellants.

*A. L. Robinson, C. Denby* and *D. B. Kumler,* for appellee.

WORDEN, C. J.—Complaint by the appellee against the appellants in two paragraphs. Demurrer to each paragraph for want of sufficient facts overruled, and exception. Issue, trial by jury, verdict and judgment for plaintiff.

The complaint is as follows, viz.:

"Catherine Heilman complains of John Krach and Christian Stock, and says that on the 1st day of December, 1873, the said John Krach obtained a permit, in due form of law, to retail spiritous and intoxicating liquors, in quantities less than a quart, for one year from that date, at his store situated on the Petersburg road, in Scott township, in the county of Vanderburg, State of Indiana, about eight miles from the city of Evansville, and from that day to the present time he has been and still is engaged in that business. The plaintiff further avers that Edward Heilman, late of Warrick county, was for many (to wit, twelve) years next previous to his decease as hereinafter described, the husband of the plaintiff, and that during all that time they lived together as husband and wife, and that they became the parents of

seven children, the fruit of their marriage; that he was a farmer by occupation, and lived on a small farm in said county of Warrick, and that the plaintiff and the said children were dependent upon the said husband and father for their support; that he was an affectionate husband, a kind father and a good citizen, and had always been of sober habits, which the defendants well knew. The plaintiff further avers that, on the 31st day of December, aforesaid, the said Edward Heilman was in full life and in good health, and about thirty-five years of age, and was living happily on his farm with his family; that on the said day he was travelling on his return home from the city of Evansville (to which he had on that day been with his wagon and two-horse team), and on the evening of that day he stopped at the store of the said defendant John Krach, of whom the said Edward bought intoxicating drink, to wit, peach brandy, in small quantities called drinks, in all amounting to one pint, which the said Edward then and there drank in the store of the said Krach; and that the said defendant Christian Stock, being then and there present, sold to the said Edward a certain quantity of other intoxicating drink, to wit, whiskey, in small quantities called drinks, in all amounting to two gills, which the said Edward then and there drank, the said Stock then and there drinking with the said Edward; (that the said defendants, in selling the said liquors to the said Edward as aforesaid, were then and there acting in concert and with the design and intention of making him drunk), by means whereof the said Edward became and was drunk, so that he was not able to walk, stand or sit, and in consequence of which drunkenness he was laid in his wagon and hauled in that drunken condition, in the night of the said day, to his own home, his team having been driven by one of his neighbors, who himself was in a state of intoxication, which the defendants then and there well knew. The plaintiff further avers that, while the said Edward was lying in his wagon in that drunken condition, and while being driven to his house as aforesaid, he was severely and fatally injured

by means of a barrel filled with salt, in the same wagon, which fell over and struck the face and head of the said Edward with great force and violence, by means of which his face was frightfully cut and wounded, and his scalp bruised, and his skull fractured, and he was also greatly injured in other parts of his body, to wit, his shoulders, back, sides, while being so driven and hauled, which were also greatly bruised and wounded by the motion of the said wagon; that all of said injuries, wounds, cuts, and bruises were made while the said Edward was in his drunken and helpless condition, and within a short time, to wit, one hour, after he left the store and premises of the defendant Krach, as aforesaid. And the plaintiff further avers that the said fit of drunkenness was caused by the said intoxicating liquors, so sold by the said Krach and the said Stock to the said Edward Heilman, and drunk by him as aforesaid. The plaintiff further avers that the said Edward would not have been injured, wounded, cut and bruised but for the drunken and helpless condition aforesaid; and she further avers that on the night of the said day, he was brought to his home and family in the state of drunkenness and with the injuries and wounds already above described; and that by means of said drunkenness, and from the effects of said injuries, the said Edward became sick, lame and diseased, and so continued, lingering in pain and sickness, until the 13th day of March, 1874, when he departed this life in consequence of the injuries aforesaid, to the plaintiff's damage of five thousand dollars, for which she prays judgment.

"2d Par. The said plaintiff, further complaining of the said defendants, says that the said John Krach, on the 1st day of December, 1873, obtained a permit from the Board of Commissioners of the county of Vanderburgh to retail intoxicating liquors, and henceforth has been engaged in retailing said liquors. And plaintiff says she was, on the 31st day of December, 1873, the wife of one Edward Heilman, and so remained until his death, and is now his widow; that said Edward Heilman, at the time of the happening of

the injuries hereinafter set out, was a man of sober and temperate habits, and was not used to drink intoxicating liquors; yet the said defendants, on the 31st day of December, 1873, combined and confederated together to make said Edward Heilman drunk; and to that end said defendants pressed him to buy intoxicating liquors at the store of said Krach, and said defendants did then and there sell to said Heilman large quantities of peach brandy, whiskey, and other intoxicating liquors, and induced him by their persuasion to buy and drink the same, which, having done, the said Heilman became and was drunk, and entirely unable to take care of himself; and the said defendants put the said Heilman in his wagon, he being drunk and insensible, and procured another person, who was also drunk and was utterly incapacitated to take care of a drunken man, to drive said wagon to the home of said Heilman, distant four miles from said store; that defendants laid said Heilman in said wagon on his back, and placed a log of wood under his head, and directed said other person to haul him to his house; that while so being hauled, and being utterly unconscious, a hoop of a barrel, which was then in said wagon, becoming unloosened from said barrel, impinged in and upon the head of said Heilman, and entered the same behind one of his ears, and worked gradually into his head, and continued to lacerate, tear and penetrate his head, until he was taken from said wagon, being a period of one hour, thereby making a large and dangerous wound and hole in the head of said Edward Heilman, from which injuries so received said Edward Heilman died, after languishing in great pain for a period of three months; and plaintiff says that she was compelled to nurse, take care of and attend to said Heilman during that time, and that her services in that regard were worth the sum of five hundred dollars; that she had no means of support, except the labor of her said husband; that he was accustomed to and did labor on a farm, in order to support his family, and to save thereby one thousand dollars every year, and to apply said money to support the plaintiff and

their children, being seven in number; and that, by the death of her said husband, she has been damaged in the means of support in the sum of three thousand five hundred dollars; and that said sums of money are still due and unpaid; wherefore she asks judgment for five thousand dollars."

Error is assigned upon the ruling of the court upon the demurrer to each paragraph of the complaint, and we proceed to consider the questions thus raised.

The common law does not, on the facts alleged, give the plaintiff any right of action. Her right of action, if she have any, is based upon statute. The statute relied upon is the act of February 27th, 1873, to regulate the sale of intoxicating liquors, etc., Acts 1873, Reg. Sess., p. 151. The eighth section of the act is as follows:

"Any person or persons who shall by the sale of intoxicating liquor, with or without permit, cause the intoxication, in whole or in part, of any other person, shall be liable for and be compelled to pay a reasonable compensation to any person who may take charge of and provide for such intoxicated person, for every day he or she is so cared for, which sum may be recovered in an action of debt before any court having competent jurisdiction."

The twelfth section provides, that, "in addition to the remedy and right of action provided for in section eight of this act, every husband, wife, child, parent, guardian, employer, or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name, severally or jointly, against any person or persons who shall, by selling, bartering, or giving away intoxicating liquors have caused the intoxication, in whole or in part, of such person," etc.

The first paragraph of the complaint is not based at all upon the eighth section of the statute. Nor do we think the second paragraph makes out a case within that section.

The section must be construed to authorize a recovery by a party "who may take charge of and provide for such intoxicated person," only for the time during which such person may remain intoxicated. This is clearly implied from the language employed and the nature and object of the provision.

The allegation in the second paragraph, that for the period of three months, during which the deceased languished, the plaintiff was compelled to nurse and take care of him, does not bring the case within the eighth section; for it does not show that the intoxication continued during that time, or, indeed, any part thereof.

Each paragraph, then, must stand or fall upon the provisions of the twelfth section.

It cannot, under the allegations, be claimed that the plaintiff was in any way injured by the intoxicated person; and it remains to inquire whether the allegations show that she was injured in person or property or means of support, "in consequence of the intoxication" of her now deceased husband.

The substance of the case made by both paragraphs is, that the defendants furnished the deceased with intoxicating liquor, until he became drunk and insensible and unable to take care of himself; that in going home, lying down in his wagon in consequence of his intoxication, he received the injury from the barrel of salt, which injury he would not have received but for having been intoxicated, and from which injury he died.

One of the objections made to the complaint, passing over others, is, in our judgment, fatal to both paragraphs.

The rule of law is, that the immediate, and not the remote, cause of any event is regarded. We have seen that if the plaintiff is entitled to recover, it is because she was injured "in consequence of the intoxication" of the deceased. The immediate cause of the injury to the plaintiff was the death of the deceased. The remote cause may have been his intoxication, which led to his injuries, which injuries, in their turn,

led to his death. The plaintiff, therefore, was not immediately injured by the intoxication of the deceased.

The rule of law above stated is well enough settled. The difficulty that usually arises is in its application. It is sometimes difficult to determine what is the remote, and what the proximate cause of an event. But no difficulty of that sort arises in the present case. Here, according to the allegations, it is clear that the intoxication of the deceased was only the remote cause of the injury to the plaintiff, while his death was the immediate cause of such injury. For such injury, we think, on principle and well considered authority, the statute does not render the defendants liable to the plaintiff.

The case of *Tisdale* v. *Inhabitants of Norton,* 8 Met. 388, is in point. There, the town was obliged to repair the highway, and an action was given by statute to any person who might receive an injury by reason of any defect or want of repair. A gully had been washed out in the highway, rendering it impassable, and the plaintiff, in passing along with his conveyance, had to drive off the highway and into a pond, in order to pursue his journey. In passing through the pond, the plaintiff's conveyance was overturned, and he was thrown into the pond, in consequence of a hole in the bottom thereof. It was held that the case did not come within the statute, and that the plaintiff was not entitled to recover.

The case of *Marble* v. *The City of Worcester,* 4 Gray, 395, is also in point. The case arose under a statute similar to that involved in the previous case. There was a defect in the way, and a man with a horse and sleigh undertook to drive through that part of the way in which the defect existed. The sleigh pitched into a hole in the ice, which constituted the defect, and the horse, taking fright, ran, threw out the driver, detached himself from the sleigh, except, the shafts, or thills, and having run some fifty rods, ran against the plaintiff, who was then in the highway, and injured him, for which the action was brought. It was held

that the plaintiff was not entitled to recover, on the ground that, though the defect in the highway was the remote cause of the injury to the plaintiff, yet it was not the immediate cause, that being the collision between the horse and himself.

SHAW, C. J., in delivering the opinion of the court, said:

" The rule, *in jure, causa proxima, non remota, spectatur,* is of very general application in the law; and although more frequently stated and illustrated in the law of insurance, yet it is equally applied to other cases of like kind. The whole doctrine of causation, considered in itself metaphysically, is of profound difficulty, even if it may not be said of mystery. It was a maxim, we believe, of the schoolmen, ' *causa causantis, causa est causati.*' And this makes the chain of causation, by successive links, endless. And this perhaps, in a certain sense, is true. Perhaps no event can occur, which may be considered as insulated and independent; every event is itself the effect of some cause or combination of causes, and in its turn becomes the cause of many ensuing consequences, more or less immediate or remote. The law however looks to a practical rule, adapted to the rights and duties of all persons in society, in the common and ordinary concerns of actual and real life; and on account of the difficulty in unravelling a combination of causes, and of tracing each result, as a matter of fact, to its true, real and efficient cause, the law has adopted the rule before stated, of regarding the proximate, and not the remote cause of the occurrence which is the subject of inquiry."

In *Crain* v. *Petrie,* 6 Hill, 522, it was said by NELSON, C. J., delivering the opinion of the court, that:

" To maintain a claim for special damages, they must appear to be the legal and natural consequences arising from the tort, and not from the wrongful act of a third party remotely induced thereby. In other words, the damages must proceed wholly and exclusively from the injury complained of."

The principle here involved was much considered in the case of *Ryan* v. *New York Central Railroad,* 35 N. Y. 210, which we cite, withholding any opinion as to whether it was correctly applied in that case.

The case of *Fairbanks* v. *Kerr,* 70 Pa. State, 86, is in point. It was there held, that " the general rule is, that a man is answerable for the consequences of a fault only so far as the same are natural and proximate, and as may, on this account, be seen by ordinary forecast, and not for those which arise from a conjunction of his fault with circumstances that are of an extraordinary nature."

The defendants, in causing the intoxication of the deceased, could not have anticipated that on his way home he would be fatally injured by the salt-barrel. That was an extraordinary and fortuitous event, not naturally resulting from the intoxication. Suppose, by way of illustration, that a person, by reason of intoxication, lies down under a tree, and a storm blows a limb down upon him and kills him, or that lightning strikes the tree and kills him. Could it be said, in a legal sense, that his death was caused by intoxication? In the chain of causation, the intoxication may have been the remote cause of his death, because, if he had not been intoxicated, he would not have placed himself in that position, and therefore would not have been struck by the limb or lightning. In the case supposed, it may be assumed as clear, that the parties causing the intoxication would not be liable, under the statute, to the widow, as for an injury to her caused by the intoxication of the deceased. Yet there is no substantial difference between the case supposed and the real case here. See, on the subject of remote and proximate causation, the case of *Kelley* v. *The State, ante,* p. 311; also, *Durham* v. *Musselman,* 2 Blackf. 96.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to sustain the demurrer to each paragraph of the complaint