No. 9687.

## DUNLAP v. WAGNER.

INTOXICATING LIQUOR.—*Unlawful Sale.*—*Injury in Consequence of Intoxication.* —*Proximate Cause.*—*Liability for Results.*—*Negligence.*—*Cases Criticised and Distinguished.*—An unlicensed liquor dealer furnished on Sunday intoxicating liquor to A. until he was helpless and unconscious, and in that condition placed him in his sleigh, to which was attached a quiet horse of the plaintiff which A. had in use. An accident, induced by the inability of A. to manage the horse, caused the latter to run away, whereby the horse was killed.

*Held,* that the liquor seller was, by statute (R. S. 1881, sec. 5323), as well as at common law, liable for the value of the horse. *Krach* v. *Heilman,* 53 Ind. 517, *Collier* v. *Early,* 54 Ind. 559, and *Backes* v. *Dant,* 55 Ind. 181, criticised and distinguished.

From the Bartholomew Circuit Court.

*G. W. Cooper* and —— *Burns,* for appellant.

*N. R. Keyes,* for appellee.

ELLIOTT, J.—The appellant was the owner of a gentle horse which he lent to Charles Dunlap, who hitched it, with another of like docile disposition, to a sleigh, and on Sunday, January 9th, 1878, drove to the appellee's place of business; the latter, although not licensed as a retail liquor seller, kept intoxicating liquors for sale, and at the time named did sell and give to Dunlap liquor in less quantities than a quart, and suffered him to drink it on his, appellee's, premises; the liquor so supplied Dunlap produced intoxication so great as to cause unconsciousness; while in this state, and incapable of controlling the horses, Dunlap was placed in the sleigh, and the horses started homeward by the appellee; because of the inability of Dunlap to manage the horses, an accident occurred which frightened them, and they ran away, and appellant's horse received such injuries as caused its death.

The appellee violated the law in selling liquor to Charles Dunlap, for the law prohibits the sale of liquor on Sunday, and also forbids its sale in less quantities than a quart by unlicensed dealers. He was, therefore, a wrong-doer, and wrong-doers are responsible for injuries proximately resulting from their wrongful acts. A man who, in violation of law makes another helplessly drunk, and then places him in a situation where his drunken condition is likely to bring harm to himself or injury to others, may well be deemed guilty of an actionable wrong independently of any statute. But we have a statute which provides that every person shall have a right of action for an injury resulting to person or property against one who shall, by selling intoxicating liquors to another, have

caused the intoxication of the person by, or through whom, the injury is done. R. S. 1881, sec. 5323.

It is plain that a right of action exists against one who makes another drunk, for the recovery for such injuries as are done by the intoxicated person " on account," as the statutory phrase runs, " of the use of such intoxicating liquors."

The right of action exists only in cases where the injury is the natural and proximate result of the wrong done in making drunk the person by whom it is caused, and the material enquiry is, whether the injury of which this appellant complains was the proximate and natural result of the appellee's wrongful act.

It is to be observed that the fact that Charles Dunlap was placed in charge of the horses is conceded by the demurrer, and the case is, therefore, that of one placing a man whom he has made helplessly drunk in a situation where injury might result to the property in his possession because of his incapacity to manage and care for it. We assume that horses require the management of an intelligent person in reasonable control of his mental faculties and physical powers, and this we do for the reason that all persons are presumed to know the natural and ordinary propensities and dispositions of such animals. Wharton Neg., section 100; Shearman & Redf. Neg., section 188; *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166; S. C., 40 Am. R. 230. If, then, horses need the control of one in possession of his faculties, the man who deprives another of the possession of them, and puts him in control of such animals, does an act which is likely to result in injury.

It is true that the injury resulting from the wrong complained of must be such as might have been reasonably foreseen and provided against, but it is by no means necessary that the precise injury which actually resulted should have been foreseen; for it is sufficient if it was of such a general nature as was likely to result from the act of the wrong-doer. It is never essential that it should be made to appear that the precise injuries which did occur could have been foreseen; it

is enough, as Mr. Thompson says, if they are "such as are usual, and as therefore might have been expected." 2 Thompson Neg. 1083, n. ; *Billman* v. *Indianapolis, etc., R. R. Co., supra ; Binford* v. *Johnston,* 82 Ind.426. A late writer says : "If his" (the wrong-doer's) "act has a tendency to injure some person of the general public, or many persons, and finally does, in the manner which was beforehand probable, cause such injury, it is proximate." 1 Sutherland Damages, 28.

There are cases bearing upon the precise question before us and we turn to them. In one of our own cases, *Schlosser* v. *State, ex rel.,* 55 Ind. 82, a complaint, charging that the husband was made drunk and thereby caused to beat his wife and neglect to provide for her, was held good, and, in support of this ruling the cases of *Fountain* v. *Draper,* 49 Ind. 441, *Barnaby* v. *Wood,* 50 Ind. 405, and *English* v. *Beard,* 51 Ind. 489, were cited by the court. In the last of these cases it was held that the seller was liable to one who was assaulted and beaten by the intoxicated person. It needs no argument to show that the injury which this appellant suffered was much more direct and proximate than that sustained by the person upon whom the drunken man committed the assault and battery ; for, that horses left free from control are more likely to run away and do mischief than a drunken man to commit a crime, is very evident. In *Mead* v. *Stratton,* 87 N. Y. 493 (41 Am. R. 386), the defendant was the keeper of a hotel; the deceased bought liquor, drank it, and became so much intoxicated that he was helped into his buggy ; he fell from it on his way and was killed, and it was held that his widow might have her action. The action was held maintainable in a case where a son was made intoxicated and in this condition so drove his father's horse as to greatly injure it. *Bertholf* v. *O'Reilly,* 8 Hun, 16. This case was affirmed in *Bertholf* v. *O'Reilly,* 74 N. Y. 509 (30 Am. R. 322). A like principle was involved and decided in *Aldrich* v. *Sager,* 9 Hun, 537, where a son-in-law, wrongfully made drunk, so recklessly drove a team as to cause the wagon to which they were at-

tached to be upset, and his mother-in-law, who was with him in the wagon, to be injured. The case of *Volans* v. *Owen*, 9 Hun, 558, is in principle the same as those cited. The Supreme Court of Ohio goes very far upon this question as is proved by the cases of *Duroy* v. *Blinn*, 11 Ohio St. 331, and *Mulford* v. *Clewell*, 21 Ohio St. 191. Damages may be recovered for property squandered or destroyed by the intoxicated man, according to the rule declared in Iowa and Michigan. *Woolheather* v. *Risley*, 38 Iowa, 468; *Hemmens* v. *Bentley*, 32 Mich. 89. In *King* v. *Haley*, 86 Ill. 106 (29 Am. R. 14), it was held that one who is injured by a pistol shot, fired by the man to whom the liquor was sold, may maintain an action under the statute, and a like holding was made in *Bodge* v. *Hughes*, 53 N. H. 614. The intoxicated man in the case of *Hackett* v. *Smelsley*, 77 Ill. 109, drove a horse and buggy into the Sangamon river, and the action was held maintainable. Expenses for nursing a person made sick by the intoxication are recoverable. *Wightman* v. *Devere*, 33 Wis. 570; *Peterson* v. *Knoble*, 35 Wis. 80.

Appellee relies upon the cases of *Krach* v. *Heilman*, 53 Ind. 517, *Collier* v. *Early*, 54 Ind. 559, and *Backes* v. *Dant*, 55 Ind. 181. In the last named case the facts were, that the husband, while intoxicated, fell down a flight of stairs and was killed, and it was held, solely upon the authority of the two cases first named, and without discussion or reference to any of our other cases, that the action would not lie. In the second of the cases named, the intoxicated man lay down upon a railroad track and was killed by a passing train; and the action was held not maintainable, and this case, like the other, rests entirely upon *Krach* v. *Heilman*, *supra*. It is difficult, if not impossible, to reconcile the doctrine of the case under immediate mention with the earlier cases of *Fountain* v. *Draper*, *supra*, *English* v. *Beard*, *supra*, and *Barnaby* v. *Wood*, *supra*, or the later one of *Schlosser* v. *State*, *ex rel.*, 55 Ind. 82. Nor has the doctrine anywhere found favor; on the contrary, it has been disapproved. Lawson Civil Rem-

edy for Injuries from Sale of Intoxicating Liquors, 44; Monthly Jurist, May, 1877; *Mead* v. *Stratton*, 87 N. Y. 493. It is quite certain that it can not be harmonized with the uniform current of judicial decisions, and it is clear that the New England highway cases, upon which it is chiefly founded, can hardly be in point upon such a question, owing to the peculiarities of the statutes of the New England States; and it is likewise certain that two of the cases cited as authority are now everywhere recognized as unsound. Cooley Torts, 76 auth. in n.; *Fent* v. *Toledo, etc., R. W. Co.*, 59 Ill. 349; S. C., 14 Am. R. 13; *Billman* v. *Indianapolis, etc., R. R. Co., supra.* It is obvious that the doctrine of *Krach* v. *Heilman, supra,* ought not to be extended, and extended it must be, or it can not embrace this case, for here there is an important element which was absent from that case, and that element is the direct and immediate act of the appellee in placing the drunken man in charge of appellant's property, knowing his incapacity to control or care for it. There is here the direct connection with the cause which led to the injury sustained by the appellant. If to the case of *Collier* v. *Early, supra,* were added the element that the seller of the liquor led the drunken man upon the track and there left him in an unconscious state, exposed to the probable danger of death from passing trains, it would make it such a case as that now at our bar. It is this important element that distinguishes the present case from the cases relied on, and makes their doctrine wholly inapplicable.

It is argued by appellee's counsel, that there was an intervening agency between his client's wrong and the appellant's injury. We think the assumption an undue one, for there was, as we understand the facts, no intervening agency; but if it were granted that the assumption is a just one, the conclusion deduced by counsel is incorrect. An intervening agency does not absolve the wrong-doer. In concluding a long and careful review of the authorities in *Weick* v. *Lander,* 75 Ill. 93, the Supreme Court of Illinois said: "The principle announced is, that whoever does an unlawful act is to be re-

garded as the doer of all that follows." The general principle which controls upon this point is declared in our own cases of *Billman* v. *Indianapolis, etc., R. R. Co., supra,* and *Binford* v. *Johnston, supra.*

Judgment reversed.