ROSINA ZIBOLD *et al.* v. RUTH RENEER.

No. 14,539. (85 Pac. 290.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Injury to Wife—Consequential Damages.* Under section 2465 of the General Statutes of 1901, if a wife be injured in her means of support as the result of an act committed by her intoxicated husband, the person who sold or gave to him the liquors, the use of which produced the intoxication, will be liable to her in damages. This statute creates a cause of action unknown to the common law, and authorizes a recovery for both proximate and remote injuries.

2. ——— *Petition—Conviction of Murder—Intoxication.* Where, in an action by a wife for loss of means of support against one who is claimed to have sold her husband intoxicating liquors, by the use of which he became intoxicated, it is alleged in the petition that while so intoxicated he committed a homicide, was convicted of murder in the first degree, and sentenced to death, and confinement in the penitentiary until such time as an order should be issued by the governor for his execution, the allegation that he was convicted of murder in the first degree is not, as a matter of law, equivalent to an allegation that he was not intoxicated when he committed the homicide.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed March 10, 1906. Affirmed.

*Waggener, Doster & Orr,* for plaintiffs in error.

*C. D. Walker,* and *J. L. Berry,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.:   Ruth Reneer obtained a judgment against Rosina Zibold and Emma Haegelin upon a petition which stated, substantially, that she was the wife of William D. Reneer; that the defendants were partners engaged in the manufacture and sale of intoxicating liquors, especially of beer, near the southwest part of the limits of the city of Atchison; that on Sunday, June 3, 1900, the defendants and their authorized agents, Carl Sheele and Kelly Haegelin, at the brewery of the defendants, unlawfully sold, furnished and gave to plaintiff's husband, and J. Burchart and C. T. Oathout, quantities of beer, which they drank, whereby they became intoxicated and were made boisterous, quarrelsome, and wholly indifferent and oblivious to conditions surrounding them; that while in this condition William D. Reneer shot and instantly killed Burchart and Oathout; that in consequence thereof he was informed against, tried, and convicted of murder in the first degree, and was on the 15th day of December, 1900, sentenced to death, and committed to the penitentiary, there to be confined and kept at hard labor until his execution upon a warrant of the governor of the state; that he still remained so confined, and would ever continue so to be until he should be executed.   A statement followed concerning the earning capacity of William D. Reneer, and his age, and the plaintiff's dependence upon his labor and personal earnings for her means of support, of which she was deprived as a result of the intoxication of her husband produced by the use of the beer so furnished by the defendants to him.

A demurrer was interposed to this petition, which was overruled.   A trial was had, and a verdict and judgment rendered for the plaintiff in the sum of $5000.   This proceeding is prosecuted to reverse the judgment.

Several assignments of error are argued at length in the briefs. The two vital questions, however, are presented by the demurrer to the petition. It is contended, first, that the petition shows upon its face that the sale of the intoxicating liquors by the defendants to the plaintiff's husband was not the direct and proximate cause of her loss; second, that the petition states that Reneer was convicted of murder in the first degree for the killing of Burchart and Oathout, which is conclusive that he was not intoxicated when he committed the homicide, and, therefore, the act of the defendants in furnishing the intoxicating liquors was not the proximate cause of plaintiff's loss of means of support.

There is no principle better settled at common law than that recoverable damages must be the proximate result of the wrongful act complained of, or that the wrongful act complained of must be the immediate and proximate cause of the injury for which a recovery is sought. Assuming that if the plaintiff be confined to this common-law rule she cannot succeed in her action, the demurrer to the petition should have been sustained, because the sale of the intoxicating liquors to Reneer and his intoxication from the use thereof were not the immediate and direct cause of the plaintiff's loss. The murder, arrest, trial, conviction, and sentence, resulting in the confinement of her husband in the penitentiary, constitute an independent, intervening cause, which was the proximate cause of. her loss of support. Under the common-law rule the furnishing of the intoxicating liquor was only the cause of the cause. The statute under which plaintiff seeks to recover reads:

"Every wife, . . . who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of intoxication, habitual or otherwise, . . . . shall have a right of action, in his or her own name, against any person who shall, by selling, bartering or giving intoxicating liquors,

have caused the intoxication of such person, for all damages actually sustained, as well as for exemplary damages; and a married woman shall have the right to bring suits, prosecute and control the same, and the amount recovered, the same as if unmarried." (Gen. Stat. 1901, § 2465.)

Similar statutory provisions are found in several of the states, but the decisions of the courts construing them are not in harmony on the proposition contended for by plaintiffs in error. By an act approved February 27, 1873, regulating the sale of intoxicating liquors in Indiana, it was provided:

"In addition to the remedy and right of action provided for in section 8 of this act, every husband, wife, . . . or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, . . . shall have a right of action . . . against any person or persons who shall, by selling, bartering, or giving away intoxicating liquors, have caused the intoxication, in whole or in part, of such person." (Laws of Ind., 1873, ch. 59, § 12.)

In the case of *Krach et al. v. Heilman,* 53 Ind. 517, Krach sold and furnished intoxicating liquors to Heilman, of which the latter drank until he became so intoxicated that he was compelled to lie down in the bottom of his wagon while returning home. A barrel of salt in the wagon fell upon him, causing his death. His widow brought an action to recover damages for her loss of means of support, and the court held that she could not recover because the selling of the intoxicating liquors to Heilman was not the immediate and proximate cause of the plaintiff's loss. It was said in the opinion that "the rule of law is that the immediate, and not the remote, cause of an event is regarded." (Page 523.) The court's attention does not appear to have been turned to the statute under which the right of action was given, nor does there appear to have been any attempt to discover its meaning. No reference was made to the provision of the statute which gave the

cause of action, nor any attempt made to construe it, or give its language any meaning, except to determine that it created a new cause of action. The doctrine of this case was followed in *Collier v. Early,* 54 Ind. 559, and in *Backes v. Dant,* 55 Ind. 181, without comment and without any reference to the statute or to its application to such actions. Subsequently, in the case of *Dunlap v. Wagner,* 85 Ind. 529, 44 Am. Rep. 42, the court criticized *Krach et al. v. Heilman, supra,* and the cases following it, in this language:

"It is difficult, if not impossible, to reconcile the doctrine of the case under immediate mention with the earlier cases of *Fountain v. Draper,* 49 Ind. 441, *English v. Beard,* 51 Ind. 489, and *Barnaby v. Wood,* 50 Ind. 405, or the later one of *Schlosser v. State, ex rel.,* 55 Ind. 82. Nor has the doctrine anywhere found favor; on the contrary, it has been disapproved." (Page 533.)

In the later case of *Homire v. Halfman,* 156 Ind. 470, 60 N. E. 154, the defendant sold intoxicating liquor to plaintiff's husband, by the use of which he became intoxicated, and while intoxicated shot and killed Seth Nease, for which he was convicted of murder and confined in the penitentiary. The action was to recover damages for loss of support, under a statute somewhat different in form but in substance and effect identical with the one before the court in *Krach et al. v. Heilman, supra.* A recovery was had, and the court quoted and relied upon the rule of construction adopted in *Beers v. Walhizer,* 50 N. Y. Supr. Ct. 254. From an examination of these cases it will be seen that the common-law rule of recovery announced in *Krach et al. v. Heilman* is not now the law in Indiana. The Indiana statute is worded like our own, except that ours uses the words "in consequence of such intoxication" where the Indiana statute uses the words "on account of the use of such intoxicating liquors, so sold."

Our attention is also called to the cases of *Shugart v. Egan,* 83 Ill. 56, 25 Am. Rep. 359, *Schmidt et al. v.*

*Mitchell,* 84 Ill. 195, 25 Am. Rep. 446, and *Schulte v. Schleeper,* 210 Ill. 357, 71 N. E. 325, wherein that court, in construing a statute substantially like our own, held that the furnishing of the intoxicating liquor must be the proximate cause of the injury or loss for which a recovery is sought, or, in other words, that the common-law rule was not changed by the statute.

It is probable that there are other states which have adopted the Illinois rule of construction, and while such precedents are of great weight the reasoning is neither convincing nor satisfactory. The legislature created a right of action unknown to the common law; in creating this new right it could, and did, extend the rule to include consequential and remote damages.

The excessive use of intoxicating liquors as a beverage is an unmixed evil. The only purpose accomplished by it is to breed and propagate vice. The legislative shafts have been leveled at this practice in nearly, if not every, state and in almost every conceivable manner which looked toward its regulation, control, or entire suppression. It is quite in accord with this policy that Kansas passed the statute invoked by the defendant in error. It was known to the legislature, as it is to all other persons, that the use of intoxicating liquors as a beverage makes drunkards; that an intoxicated person is incapable of caring for himself, is always in danger of being injured, and is likely to inflict injury upon others, at the cost of his liberty—possibly his life; that he habitually neglects his business and family; that the harm resulting from the excessive use of intoxicating liquors always falls most pitilessly upon the dependents of the user, not infrequently pauperizing himself and family. The idea naturally suggested itself to the legislature that if the sellers of intoxicants were made liable to those who should sustain injury to person or property or means of support by an intoxicated person, or in consequence of intoxication, the

hazard would be so great that fewer persons would engage in the business, and those who should engage in it would exercise more caution. The legislature, therefore, gave a cause of action and created a liability for these injuries where none existed at common law.

It is apparent that it was the intention of the legislature to make this remedy effective and of practical utility, and that its enforcement should not be hampered by technical common-law rules. It was intended to provide a remedy against the persons furnishing the liquor which should produce the intoxication, where the injuries sustained in person, property or means of support should result, in whole or in part, from such intoxication. Any other construction would, in a large measure, defeat the object of the statute. Persons who are openly engaged in a business prohibited by law, the results of which are to enrich themselves and make paupers and criminals of others, have no complaint against a liberal construction of a statute intended to make them responsible in civil damages to those who have been injured as a result of the illegal traffic in which they are engaged.

This court does not stand alone in this construction of the statute. There are many cases which hold that these statutes creating a new cause of action by their terms clearly eliminate the common-law rule of proximate cause, and that the plaintiff may recover where the loss sustained is the result of intoxication induced, in whole or in part, by liquors furnished by the defendant. Among these, the leading case is *Beers v. Walhizer,* 50 N. Y. Supr. Ct. 254. The statute under consideration was substantially like ours. The facts upon which the plaintiff relied were that the defendant sold her husband intoxicating liquors, the use of which caused him to become intoxicated; and while intoxicated, and in consequence thereof, he shot and killed one Banfield, for which he was arrested, convicted, and sentenced to a term of years in the penitentiary. The

contention there, as here, was that the selling of the intoxicating liquor was not the proximate cause of the loss sustained by the plaintiff. It was said in the opinion:

"Under the act it is necessary that two facts should concur besides the sale or gift of the liquor by the defendant to constitute a cause of action, to wit, intoxication resulting from its use, in whole or in part, and the loss of the means of support by the plaintiff in consequence of such intoxication. The statute requires nothing more. The act itself establishes a rule of evidence applicable to and controlling in all cases arising under its provisions, which in some respects is new, and has produced a radical change of the common-law rule. The statute makes no distinction whether the loss of the means of support is the direct or remote result of the intoxication. It only requires that it should be established that the loss of the means of support is the result of such intoxication." (Page 256.)

This doctrine was approved and followed in *Homire v. Halfman,* 156 Ind. 470, 60 N. E. 154. In the case of *Bertholf v. O'Reilly,* 74 N. Y. 509, 30 Am. Rep. 323, the court said:

"The legislature . . . may change the rule of the common law, which looks only to the proximate cause of the mischief, in attaching legal responsibility, and allow a recovery to be had against those whose acts contributed, although remotely, to produce it. This is what the legislature has done in the act of 1873." (Page 524.)

In the case of *Volans v. Owen et al.,* 74 N. Y. 526, 529, 30 Am. Rep. 337, it was remarked:

"Both direct and consequential injuries are plainly included in the remedy given, and the legislature, by giving a right of action for injury to 'means of support' —a cause of action unknown to the common law—evidently intended to create a new ground and right of action."

In *Mead v. Stratton et al.,* 87 N. Y. 493, 41 Am. Rep. 386, it was held that the statute provided for a recovery by action for injuries to person or property or

means of support, without any restriction whatever, and that both direct and consequential injuries were included. It is evident that the legislature intended to go, in such a case, far beyond anything known to the common law, and to provide a remedy for injuries occasioned by one who was instrumental in producing, or who caused, such intoxication. The same interpretation was placed upon the statute in *Neu v. McKechnie et al.*, 95 N. Y. 632, 47 Am. Rep. 89.

The contention that the allegation in the petition that Reneer was convicted of murder in the first degree is conclusive that he was not intoxicated when he committed the homicide cannot be sustained. The reasoning upon this proposition is that one cannot be convicted of murder in the first degree who is intoxicated at the time of the commission of the homicide. Intoxication is not of itself a defense to a charge of murder in the first degree. It does not follow that because a man is intoxicated his mind is necessarily so enfeebled thereby that he is incapable of deliberating or forming a purpose. One may be intoxicated and entertain, and act from, malice; he may be intoxicated and entertain a determination to commit murder; indeed, the intoxication may suggest the murderous thought. For a person to be too drunk to entertain an intent to kill it would seem that he would have to be too drunk to entertain an intent to shoot. (*The State v. White*, 14 Kan. 538; *The State v. Mowry*, 37 Kan. 369, 15 Pac. 282; *The State v. O'Neil*, 51 Kan. 651, 33 Pac. 287, 24 L. R. A. 555.)

The other assignments of error have been examined, and nothing prejudicial to the plaintiffs in error is found. The judgment is affirmed.

All the Justices concurring.