No. 56,921

LYLLIS LING, *Appellant,* v. JAN'S LIQUORS, *Appellee.*

(703 P.2d 731)

Opinion filed July 17, 1985.

*Donald W. Vasos,* of Vasos, Kugler & Dickerson, of Kansas City, argued the cause and *Stephen G. Dickerson,* of the same firm, was with him on the briefs for appellant.

*Mark V. Parkinson,* of Payne & Jones, Chartered, of Olathe, argued the cause, and *Keith Martin,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: Lyllis Ling (plaintiff-appellant) brought this action in the trial court alleging negligence on the part of Jan's Liquors (defendant-appellee) in selling alcohol to a minor whose intoxication allegedly resulted in a car accident causing plaintiff's injury. Ling appeals from an order and judgment dismissing her complaint against defendant on the ground that it fails to state a claim upon which relief can be granted pursuant to K.S.A. 60-212(b). We affirm the decision of the trial court.

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, Ling is afforded the safeguard of having all her allegations taken as true and all inferences drawn favorably to her. *Wirt v. Esrey,* 233 Kan. 300, 662 P.2d 1238 (1983). Applying that principle, we look to the complaint for the facts. It alleges:

At approximately 1 a.m., on Sunday, February 3, 1980, Ling was driving her automobile east on Johnson Drive in Fairway, Johnson County, Kansas, when the vehicle became disabled. Ling left the vehicle and was standing beside it when she was struck by a vehicle driven by Richard Shirley. At that time Shirley was nineteen years old and a minor under Missouri law governing the sale of intoxicating liquors to minors.

At the time of the accident, Shirley was operating a motor vehicle under the influence of alcohol. A blood alcohol examination taken at Shawnee Mission Medical Center, Overland Park, Kansas, showed a blood alcohol concentration of 0.30 percent by weight.

The petition also alleges that Jan's Liquors, a Missouri retail liquor establishment, sold or provided to Richard Shirley on the night of February 2, 1980, an alcoholic beverage which rendered him incapable of operating a motor vehicle.

On February 3, 1982, Ling filed a petition in the District Court of Johnson County, Kansas, seeking damages for the injuries she received which resulted in the amputation of both her legs. On July 20, 1983, the defendant filed a motion to dismiss pursuant to K.S.A. 60-212(b).

The district court granted the motion to dismiss, concluding (1) "there is no liquor vendor liability in Kansas and there is no indication that the Kansas Supreme Court will impose the same"; (2) Kansas law and not Missouri law should apply to the

instant action; and (3) the Kansas long-arm statute would apply to give the court in personam jurisdiction in the case.

Initially, we must ascertain whether the trial court erred in finding the Kansas long-arm statute (K.S.A. 60-308b) applied to give it in personam jurisdiction over Jan's Liquors, a nonresident defendant. The trial court based its finding on K.S.A. 60-308(b)(7), which provides:

"(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

. . . .

"(7) causing to persons or property within this state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury either (A) the defendant was engaged in solicitation or service activities within this state; or (B) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use."

The defendant argues that this section of the Kansas long-arm statute is limited to products liability cases. We agree.

In order for personal jurisdiction to be obtained under K.S.A. 60-308(b)(7), the defendant must have had the type of contact with the state as defined in either alternative (A) or (B). In other words, the defendant must either have been engaged in solicitation or service activities within the state, *or* the product which was the cause of injury must have been used or consumed within the state in the ordinary course of trade or use. In *Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 438 P.2d 128 (1968), this court recognized that the legislative intent of K.S.A. 60-308(b)(7) was to grant in personam jurisdiction to the courts of this state over those who engage in the manufacture, sale, or servicing of products if they receive or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of their products within this state.

We find that the sale by an out-of-state liquor vendor to an occasional Kansas customer does not fit within the provisions of either alternative (A) or (B). Moreover, based on our analysis of legislative intent in *Tilley*, we find the liquor vendor is not the kind of defendant the legislature intended to reach when it

enacted K.S.A. 60-308(b)(7). Therefore, the trial court erred by relying on K.S.A. 60-308(b)(7).

An Illinois court met with a similar factual setting and jurisdictional issue in *Wimmer v. Koenigseder*, 128 Ill. App. 3d 157, 470 N.E. 2d 326 (1984). In that case, the plaintiff brought suit on behalf of the decedent whose death resulted from injuries she received in a car accident in Illinois. The defendant-driver who caused the accident, a minor for purposes of Illinois law, had been served alcohol in a nearby Wisconsin tavern where he was of legal drinking age. The plaintiff brought suit in Illinois against the Wisconsin liquor vendor. The trial court dismissed for lack of jurisdiction. The appellate court reversed and held, in part, that Illinois had in personam jurisdiction under the section of its long-arm statute which provides jurisdiction over any person who commits a "tortious act within this State." Ill. Ann. Stat. ch. 110, § 2-209(a)(2) (Smith-Hurd 1983). The court stated, "For the purposes of the long-arm statute, 'physical presence is not necessary for the commission of a tortious act within this State; . . . the place of a wrong is where the last event takes place which is neessary to render the actor liable.' [Citations omitted.]" 470 N.E. 2d at 331. The court found the "last event" was the injury in Illinois. The fact that the sale occurred entirely in another state was of no consequence. The court further found that due process requirements of "minimum contacts" were met.

K.S.A. 60-308(b)(2) is similar to the provision relied on by the Illinois court. It provides jurisdiction over any person who commits a "tortious act within this state."

In the case at bar, the negligent act (selling liquor to a minor) was committed outside this state, while the injury occurred within this state. Therefore, in order for K.S.A. 60-308(b)(2) to apply, it must be found that an injury which occurs in this state as a result of a negligent act outside this state is equivalent to the commission of a "tortious act within the state." This is a question of first impression in Kansas.

Vernon's Kansas C. Civ. Proc. § 60-308 (1965) contains several articles discussing the Kansas long-arm statute. Each article concludes that if the injury caused by a tortious act occurs within this state, even though the first part of the tortious act took place outside the state, the occurrence of the injury is sufficient for establishing personal jurisdiction under (b)(2).

Other jurisdictions, in interpreting provisions similar to K.S.A.

60-308(b)(2), have given the term "tortious act" a broad interpretation, deeming it to imply the whole continuum of actions involved, rather than a single act. *Vandermee v. Dist. Ct.*, 164 Colo. 117, 433 P.2d 335 (1967); see also *Jack O'Donnell Chevrolet, Inc. v. Shankles*, 276 F. Supp. 998 (N.D. Ill. 1967); *Gray v. Amer. Radiator & Sanitary Corp.*, 22 Ill. 2d 432, 176 N.E. 2d 761 (1961). Under this interpretation, the "tortious act" is not complete until the injury has occurred. In other words, the "tortious act" is deemed to have occurred in the state where the injury occurs.

In *J.E.M. Corp. v. McClellan*, 462 F. Supp. 1246 (D. Kan. 1978), it was held that a fraudulent misrepresentation made from without the jurisdiction (telephone calls) which cause tortious injury within the jurisdiction constituted a "tortious act" in this state within the meaning of K.S.A. 60-308(b)(2). The court found that a sufficient constitutional basis for the exercise of jurisdiction existed and arose out of the intentional tortious act causing injury to a resident in the forum on a claim for damages arising from that act.

Even though the *McClellan* case involved an intentional tort while the case at bar involves negligence, we find the reasoning in *McClellan* is applicable. In *McClellan*, the "tortious act" included both the misrepresentations from outside the state and the resulting injury in Kansas. In the case at bar, the "tortious act" included both the selling of the liquor in Missouri and the injury to the plaintiff in Kansas. The act was completed in Kansas. Therefore, we hold that under the provisions of K.S.A. 60-308(b)(2), it is possible to bring suit in Kansas to recover damages for injuries occurring in this state which resulted from negligent conduct outside the state.

This holding is consistent with our oft-repeated assertion that the long-arm statute should be liberally construed to assert jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution. *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974); *Woodring v. Hall*, 200 Kan. 597, 438 P.2d 135 (1968).

Accordingly, we find the trial court reached the correct result for the wrong reason, and so its decision on this point is upheld. *Strehlow v. Kansas State Board of Agriculture*, 232 Kan. 589, 592, 659 P.2d 785 (1983).

The plaintiff next contends the trial court erred in finding that Kansas substantive law governed the action.

Under Missouri law, a tavern owner can be held civilly liable for selling intoxicating liquor to a minor. Ling argues that the rule in Kansas is that the law of the state where the tort occurred is applied to determine the substantive rights of the parties; that the tort in this case was the wrongful sale of the intoxicating liquor to a minor; and, therefore, Missouri substantive law should apply. Jan's Liquors argues that Kansas courts are to apply the law of the state where the injury occurred and, since the injury in this case occurred in Kansas, Kansas law should govern.

The rule in this state is that the law of the state where the tort occurred—*lex loci delicti*—should apply. *McDaniel v. Sinn,* 194 Kan. 625, 400 P.2d 1018 (1965); *Pool v. Day,* 141 Kan. 195, 40 P.2d 396 (1935). However, this court has never addressed the conflict of law issue in a multistate tort action—that is, where the negligent act originated outside the state, but the resultant injury occurred in the state. In *Swearngin v. Sears, Roebuck & Company,* 376 F.2d 637, 639 (10th Cir. 1967), the court stated:

" '[T]he general rule is that where an act of omission or commission occurs at one place and resulting death, personal injury, or damage takes place at another, the situs of the actionable wrong is the place at which the death, personal injury or property damage takes place.' "

Ling acknowledges that under the doctrine of *lex loci delicti,* the situs of the injury determines the governing law. However, she argues that in this type of case, the accident site is overshadowed by the location of the unlawful sale of liquor. Ling suggests that this court should adopt an analytical approach to determine whose law should govern. The "analytical approach" has been adopted by a number of courts in recent years. It allows the court to resolve the choice of substantive law by giving to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual situation, thereby allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation. See Annot., 29 A.L.R. 3d 603; *Balts v. Balts,* 273 Minn. 419, 142 N.W. 2d 66 (1966); *Fuerste v. Bemis,* 156 N.W. 2d 831 (Iowa 1968). We reject the analytical approach for determining what law should govern the substantive rights of the parties.

We hold that in an action for recovery of damages for injuries

sustained in Kansas which were the result of a negligent act in another state, the liability of the defendant is to be determined by the laws of this state. Accordingly, the trial court did not err by applying Kansas law.

The final issue is whether Kansas recognizes a claim for relief against one furnishing liquor to a minor in favor of those injured as a consequence of the minor's intoxication.

Kansas does not have a dram shop act. Further, there has been no judicial imposition of dram shop liability in this state. Therefore, the question we are faced with is whether—in the absence of a dram shop act—this court should impose liability on the defendant, thus creating a new cause of action in this state.

Ling argues that we should impose liability upon the defendant on the basis of common-law principles of negligence or negligence per se. Jan's Liquors argues that in the absence of a special dram shop act specifically creating a civil remedy and civil cause of action against the commercial purveyor of intoxicants, no remedy or cause of action can be maintained.

At common law, and apart from statute, no redress existed against persons selling, giving, or furnishing intoxicating liquor for resulting injuries or damages due to the acts of intoxicated persons, either on the theory that the dispensing of the liquor constituted a direct wrong or that it constituted actionable negligence. This rule was based on the theory that the proximate cause of the injury was the act of the purchaser in drinking the liquor and not the vendor in selling it. See, *e.g., State v. Hatfield,* 197 Md. 249, 78 A. 2d 754 (1951); 45 Am. Jur. 2d, Intoxicating Liquors § 553. This court recognized the common-law rule of nonliability for a liquor vendor in *Stringer v. Calmes,* 167 Kan. 278, 205 P.2d 921 (1949).

In recent years, many states have retreated from or have abrogated the strict common-law rule. Fourteen states now have dram shop statutes which give, generally, a right of action to persons injured in person, property, or means of support, by an intoxicated person, or in consequence of the intoxication of any person, against the person selling or furnishing the liquor which caused the intoxication in whole or in part. See appendix.

Courts in 29 jurisdictions, including the District of Columbia, have judicially abrogated the common-law doctrine of no liability. See appendix. Six states with dram shop laws have judicially imposed liability in some form. See appendix. Many of the

jurisdictions which now recognize a common-law right of action do so on the premise that the serving of liquor to a minor or an inebriated person initiates a foreseeable chain of events for which the tavern owner may be held liable. See, *e.g., Campbell v. Carpenter,* 279 Or. 237, 566 P.2d 893 (1977). Others of these jurisdictions conclude that criminal statutes in force in their jurisdiction which proscribe sales of intoxicants to minors or inebriated persons establish a standard of conduct for tavern owners and their employees, deviation from which may constitute negligence per se. See, *e.g., Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983). These courts reason that the criminal statutes represent public policy and public interest in preventing injury to those specific classes incompetent to handle intoxicating liquors as well as injury to the public at large.

Six states which do not have dram shop laws have refused to impose liability judicially. See appendix. These jurisdictions have considered, but declined to follow, the new trend of cases, because they find the issue is one of public policy which is best left to the legislative body. These courts refuse to find negligence per se on the ground that the criminal statutes were intended to be purely regulatory in nature and were not intended to create a civil cause of action.

By way of historical background to aid in a better understanding of the problems involved in this appeal, we point out that the territorial legislature of Kansas enacted a dram shop act in 1859. That law included a civil damage statute which provided a cause of action against the seller, barterer or giver of intoxicating liquors for damage or injury caused "by any intoxicated person or in consequence of intoxication." The statute was included in the 1881 revision of the statutes (L. 1881, ch. 128, § 15) and again in 1923 when it was designated R.S. 1923, 21-2150 and stated:

"Every wife, child, parent, guardian or employer, or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of intoxication, habitual or otherwise, of any person, such wife, child, parent or guardian, employer or other person shall have a right of action, in his or her own name, against any person who shall, by selling, bartering or giving intoxicating liquors, have caused the intoxication of such person, for all damages actually sustained, as well as for exemplary damages; and a married woman shall have the right to bring suits, prosecute and control the same, and the amount recovered, the same as if unmarried; and all damages recovered by a minor under this act shall be paid either to such minor, or to his or her parents, guardian, or next friend, as the court shall direct; and all suits for damages under this act shall be by civil action in any of the courts of this state having jurisdiction thereof."

Several Kansas cases have discussed and upheld the constitutionality of the statute. See *Coy v. Cutting*, 138 Kan. 109, 23 P.2d 458 (1933); *Zibold v. Reneer*, 73 Kan. 312, 85 Pac. 290 (1906); *Landrum v. Flannigan*, 60 Kan. 436, 56 Pac. 753 (1899).

On November 2, 1948, the citizens of this state voted to amend art. 15 of the Constitution of the State of Kansas. The result was that only the open saloon is now prohibited in this state. (Art. 15, § 10, Constitution of Kansas.) The new constitutional provision gave the legislature the power to regulate, license, and tax the manufacture and sale of intoxicating liquors and to regulate the possession and transportation of intoxicating liquors.

In 1949 the legislature repealed certain statutes under the "Bone-Dry Law" (ch. 41—Intoxicating Liquors), because the Kansas constitutional prohibition against the manufacture and sale of intoxicating liquors had been repealed. The legislature, exercising its power, enacted the "Kansas Liquor Control Act." (Ch. 41, art. 1 through art. 27.) The new act regulated the manufacturing, bottling, blending, selling, bartering, transportation, delivery, furnishing or possessing of alcoholic liquor. The Act was a comprehensive plan to regulate liquor from the time of its manufacture within the state or importation into the state until it was ultimately sold by a licensed retailer for use or consumption. *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 752, 408 P.2d 877 (1965). Included in the Act was the prohibition against the sale of intoxicating liquors to minors and incompetents. G.S. 1949, 41-715 stated:

"No person shall knowingly or unknowingly sell, give away, dispose of, exchange or deliver, or permit the sale, gift or procuring of any alcoholic liquor to or for any minor; and no such minor shall represent that he is of age for the purpose of asking for, purchasing or receiving alcoholic liquor from any persons, except in cases authorized by law. No person shall knowingly sell, give away, dispose of, exchange or deliver, or permit the sale, gift or procuring of any alcoholic liquor to or for any person who is mentally incompetent, or any person who is physically or mentally incapacitated by the consumption of such liquor. . . . [L. 1949, ch. 242, § 78; March 9.]"

The statute also provided for a fine or imprisonment.

The 1949 legislature—the same legislature which enacted the criminal regulatory statute—chose not to reenact the dram shop act. It was repealed in G.S. 1949, 41-1106, and has never been reenacted.

The 1949 law prohibiting sale of intoxicating liquor to minors was amended in 1963 (L. 1963, ch. 267, § 1) and in 1965 (L. 1965, ch. 277, § 8). K.S.A. 41-715 now states:

"No minor shall represent that he is of age for the purpose of asking for, purchasing or receiving alcoholic liquor from any person except in cases authorized by law. No minor shall attempt to purchase or purchase alcoholic liquor from any person. No minor shall possess alcoholic liquor. No person shall knowingly sell, give away, dispose of, exchange or deliver, or permit the sale, gift or procuring of any alcoholic liquor to or for any person who is an incapacitated person, or any person who is physically or mentally incapacitated by the consumption of such liquor. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than two hundred dollars ($200) or by imprisonment for not to exceed thirty (30) days, or both such fine and imprisonment in the discretion of the court. [L. 1949, ch. 242, § 78; L. 1963, ch. 267, § 1; L. 1965, ch. 277, § 8; June 30.]"

The 1965 legislature enacted L. 1965, ch. 277, § 7, making it a crime for any person to knowingly or unknowingly sell to, buy for, give to, or furnish, either directly or indirectly, any intoxicating liquor to any person under the age of twenty-one years. That statute, K.S.A. 1965 Supp. 38-715, included a provision revoking the retail liquor license issued under K.S.A. 41-308 of any retailer who violated the statute. The revocation penalty was later repealed when K.S.A. 21-3610 was enacted in 1969. When the legislature enacted that statute in 1969, it omitted the phrase "knowingly or unknowingly," making the present violation a general intent crime.

Since the legislature's repeal of the civil liability statute in 1949, there has been no reported Kansas case asserting the liability to third persons of one selling or furnishing liquor. The last case to discuss the dram shop statute was *Stringer v. Calmes*, 167 Kan. 278, which was decided in 1949 prior to the repeal of the act. In that case the court held, unequivocably, that no common-law right of action existed.

In recent years, the Kansas legislature has made control of drunken drivers a high priority matter. Significant legislation has tightened the laws which deal with such offenses. The legislature of this state has considered all aspects of the problem of drunken driving in seeking solutions to the problem.

In 1984, limited dram shop legislation was introduced. (H.B. 2661). The proposed bill imposed liability on any person negligently selling or furnishing alcoholic beverages to a minor where the minor, under the influence thereof, caused death, personal injury or property damage to another. The bill died after it was passed out of committee.

On January 3, 1985, dram shop legislation was proposed by the

Kansas Attorney General. A press release of that date from his office states in part:

"Attorney General Robert T. Stephan has written letters to the newly appointed chairmen of the House and Senate Judiciary committees urging consideration of a dram shop law in Kansas, along with other measures to stiffen the state's drunk driving laws.

"Stephan wrote the letters to Senator-elect Robert Frey, Chairman of the Senate Judiciary Committee and Rep. Joe Knopp, Chairman of the House Judiciary Committee.

"The dram shop law Stephan proposes would give persons injured by an intoxicated person, their families and employers the specific right to sue stores selling package liquor or beer, private clubs and taverns. The clubs, taverns and stores could be found liable for damages if they sold beer or liquor to a person who already was intoxicated, or served them alcohol to the point of intoxication, provided that the intoxication contributed to the injury."

Five days later (January 8, 1985) another press release from the Attorney General's Office stated:

"Attorney General Robert T. Stephan said today he will advise the chairmen of the Judiciary committees he is modifying his proposals to combat drunk driving.

" 'If you have decided that you have come up with a bad idea then you have a responsibility to say so,' Stephan said. 'I have the courage to make suggestions for legislative study, and also have the courage to know when my proposals to deter drunk driving should be modified.

" 'Upon reexamination, I believe that existing law can be strengthened to better combat drunk driving. The dram shop law which I proposed would only add to legal entanglements. Therefore, I am withdrawing my suggestion that a dram shop law be enacted and will continue to study further means to deal with drunk driving.' "

With this historical background in mind, we again turn to the plaintiff's arguments. Ling contends that the violation of K.S.A. 21-3610 and K.S.A. 41-715 (establishing criminal penalties for sale of alcoholic liquor to a minor) is a breach of a duty imposed by law and, thus, negligence per se. In other contexts this court has recognized the rule that breach of a duty imposed by law or ordinance is negligence per se, and that damages may be predicated on its violation if the breach is the proximate cause of the injury or damages or substantially contributes to the injury. *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 610 P.2d 1107 (1980); *Kendrick v. Atchison, T. & S.F. Rld. Co.,* 182 Kan. 249, 260, 320 P.2d 1061 (1958). We decline to find negligence per se in this case since to do so would subvert the apparent legislative intention.

The predecessor to K.S.A. 41-715 (of which K.S.A. 21-3610 was once a part) was first enacted in 1949, the same year the dram

shop act was repealed. Since that time, the legislature, although it has considered it, has not re-created a civil cause of action in favor of those injured as a result of a violation of the liquor laws. Clearly, the legislature would have done so had it intended for there to be a civil cause of action. K.S.A. 41-715 prohibits the dispensing of intoxicating liquors to certain classes of persons and is a comprehensive act to *regulate* the manufacture, sale, and distribution of alcoholic liquors. The legislature did not intend for it to be interpreted to impose civil liability. Therefore, we hold that the Missouri liquor vendor's violation of a criminal regulatory statute was not negligence per se.

As previously noted, the common-law rule is that, in the absence of legislation, the suppliers of alcohol are not liable to the victims of an intoxicated tortfeasor. *Stringer,* 167 Kan. 278. The common law remains in force in this state where the constitution is silent or the legislature has failed to act. K.S.A. 77-109. However, the common law is not static. It is subject to modification by judicial decision in light of changing conditions or increased knowledge where this court finds that it is a vestige of the past, no longer suitable to the circumstances of the people of this state. Indeed, we have not hesitated to adopt a new cause of action by judicial decision where we have determined that course was compelled by changing circumstances. See, *e.g., Dawson v. Associates Financial Services Co.,* 215 Kan. 814, 529 P.2d 104 (1974) (creating new cause of action of intentional infliction of emotional distress); *McCart v. Muir,* 230 Kan. 618, 641 P.2d 384 (1982) (creating new cause of action for negligent entrustment). See also *Durflinger v. Artiles,* 234 Kan. 484, 673 P.2d 86 (1983).

Although empowered to change the common law in light of changed conditions, this court recognizes that declaration of public policy is normally the function of the legislative branch of government. Whether Kansas should abandon the old common-law rule and align itself with the new trend of cases which impose civil liability upon vendors of alcoholic beverages for the torts of their inebriated patrons depends ultimately upon what best serves the societal interest and need. Clearly, this is a matter of public policy which the legislature is best equipped to handle.

The court in *Holmes v. Circo,* 196 Neb. 496, 504-05, 244 N.W.2d 65 (1976), made the following astute observation with which we agree:

"We are mindful of the misery caused by drunken drivers and the losses sustained by both individuals and society at the hands of drunken drivers, but the task of limiting and defining a new cause of action which could grow from a fact nucleus formed from any combination of numerous permutations of the fact situation before us is properly within the realm of the Legislature.

"The imposition of a common law duty of due care would create a situation rife with uncertainty and difficulty. If the commercial vendor is liable for negligence, does the host at a social gathering owe a duty to prospective victims of guests? The difficulties of recognizing intoxication and predicting conduct of an intoxicated patron without imposing some duty of inquiry are evident. Problems could also arise in the apportionment or sorting out of liability among the owners of various bars visited on 'bar hopping' excursions. The correct standard of care to be used also presents a problem, as does the determination of whether all acts of the patron, including intentional torts, should be included within the liability of the tavern owner or operator."

In the final analysis, we find the decision should be left to the legislature.

Accordingly, we affirm the trial court's finding that the plaintiff failed to state a claim upon which relief could be granted.

HOLMES, J., concurring in part and dissenting in part: I concur with the majority opinion that under the common law as it exists in this state there is no liability in this case and that the trial court was correct in dismissing plaintiff's case for failure to state a cause of action. When the legislature, in 1949, repealed R.S. 1923, 21-2150, it would appear obvious that it intended the common law to prevail. As pointed out by the majority opinion, the legislature has, on numerous occasions, revised our liquor control laws but has failed to re-enact legislation creating the cause of action sought by plaintiff and it is not our position to do so. Hence, I agree with the result reached by the majority opinion.

I disagree with that portion of the opinion which would apply long-arm jurisdiction under K.S.A. 60-308(b)(2) to the facts of this case. The tortious act of the defendant in selling liquor to a minor in Missouri is too far removed from the auto accident occurring hours later, in Kansas, to be considered the "commission of a tortious act within this state" as required by the statute. While plaintiff's unfortunate injuries were suffered in Kansas, they were not, in my opinion, the result of any tortious act committed in Kansas by Jan's Liquors. The tortious act of this defendant was complete upon the sale of the liquor in Missouri. There are not

sufficient minimum contacts in this case to justify personal jurisdiction under the long-arm statute. See *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. 324, 662 P.2d 553 (1983).

MCFARLAND and HERD, JJ., join in the foregoing concurring and dissenting opinion.

LOCKETT, J., concurring and dissenting: I concur with the majority that: (1) under the provisions of K.S.A. 60-308(b)(2) it is possible to bring suit in Kansas to recover damages for injuries occurring in this state which resulted from negligent conduct outside the state; and (2) in an action for recovery of damages for injuries sustained in Kansas which were the result of a breach of a duty in another state, the liability of the defendant is to be determined by the laws of this state.

I cannot agree with the majority's denial of a right of action to persons injured in person, property or means of support, by an intoxicated person, or in consequence of the intoxication of any person, against the person illegally selling or furnishing the liquor which caused the intoxication in whole or in part. In reaching this conclusion, the majority, by denying that a cause of action exists, misapplies the common law, the legislature's acts and prior decisions of this court.

The majority, citing *State v. Hatfield*, 197 Md. 249, 78 A.2d 754 (1951), and 45 Am. Jur. 2d, Intoxicating Liquors § 553, states, "At common law, and apart from statute, no redress existed against persons selling, giving, or furnishing intoxicating liquor for resulting injuries or damages due to the acts of intoxicated persons, whether on the theory that the dispensing of the liquor constituted a direct wrong or constituted actionable negligence." The Am. Jur. 2d citation actually states, "At common law it is not a tort to either sell or give intoxicating liquor to *ordinary able-bodied men*, and it has been frequently held that in the absence of statute, there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. The reason usually given for this rule is that the drinking of the liquor, not the furnishing of it, is the proximate cause of the injury. . . . [O]ne cannot become intoxicated by reason of liquor furnished him if he does not drink it."

When the driver, Shirley, was furnished intoxicating liquor in this case he was not an able-bodied man. He was a minor. There is a statute in Kansas, as well as a similar one in Missouri, which prohibits the sale or furnishing of intoxicating liquor to a minor. K.S.A. 41-715. Clearly the common law is not a bar to Ling's action against the vendor who illegally furnished intoxicating liquor not to an able-bodied man, but to a minor.

The common law of England is the basic component of the common law adopted in the United States. Even if the common law is as the majority states, the courts of this country are not required to adhere to the decisions of the English common law courts unless such law is adopted by the state courts or by legislative enactment in aid of the general statutes.

Constitutional or statutory provisions in most states expressly declare the common law to be in force. The 1868 General Statutes of the State of Kansas, ch. 119, sec. 3 (now K.S.A. 77-109) provided that the common law shall remain in force in aid of the general statutes. The common law has been continuously incorporated into our law by our legislature to fill the voids in law where the constitution is silent or the legislature and the courts have failed to act.

When our legislature adopted the rule that the common law was to remain in force in aid of the general statutes, it recognized that the common law was modified by our constitution and can be modified by the legislature when it enacts new laws or repeals old laws. The legislature also recognized that the common law can be modified by the courts when rendering judicial decisions and when the conditions and wants of the people require action (K.S.A. 77-109).

The courts of this state have never maintained that the common law is static and must be used to maintain the status quo. Like the Constitution of the United States and the constitution of this state, the common law grows as it is applied to new situations or as a need arises. The common law is judge-made and judge-applied. It is not to be followed blindly and can be changed when conditions and circumstances require if the prior law is unjust or has become bad public policy. In the past, this court has expanded the common law to meet the requirements of a modern society. It would be unfortunate to our economy and our developing society if we should cease to engage in the

common-law tradition of judicial expansion which adapts the law to the ever-changing needs and demands of a dynamic society.

The general principle of negligence law is that every person owes a duty to avoid creating situations which pose an unreasonable risk of harm to others. Negligence exists where the duty owed by one person to another is breached. Further, if recovery is to be obtained for such negligence, the injured party must show: (1) a causal connection between the duty breached and the injury received; and (2) that the person was damaged by that negligence. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983).

In 1974, we recognized that an action exists against one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 820, 529 P.2d 104 (1974). In *McCart v. Muir*, 230 Kan. 618, 641 P.2d 384 (1982), we determined that parents who knowingly and negligently furnish a car to their son, who by reason of age, experience, mental condition, or known habits of recklessness, is incapable of operating a vehicle with ordinary care, are responsible for the injuries caused by their negligent entrustment of the automobile to their son. In *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983), there was evidence that an architect-engineer had actual knowledge of safety standards contained in a construction contract and had actual knowledge that the prescribed safety precautions were not being followed by the contractor. We imposed a duty upon the architect-engineer to take reasonable action to prevent injury to the contractor's employees. In *Durflinger v. Artiles*, 234 Kan. 484, where a state hospital physician, as part of his employment, participated in a hospital team which recommended that a committed patient be discharged because he was no longer dangerous to himself or others, we imposed a duty upon that physician to use reasonable and ordinary care and discretion in making the recommendation to release the patient. The duty imposed to protect was a duty owed to both the patient and the public. In each of these cases where this court imposed a duty for a negligent act, the defendants did not purposefully violate a law.

We have recognized there is a distinction between "negligence" and "negligence per se." Negligence must be found by

the jury from the evidence, while "negligence per se" results from a violation of law or ordinance. Kansas follows the rule that a breach of duty imposed by law or ordinance is negligence per se, and liability in damages can be predicated on violation of that law where that breach is the proximate cause of the injury or damages or substantially contributes to the injury. *Kendrick v. Atchison, T. & S.F. Rld. Co.,* 182 Kan. 249, 260, 320 P.2d 1061 (1958).

The majority states that a breach of a duty imposed by law or ordinance is negligence per se, unless the legislature clearly did not intend to impose civil liability for the breach. It states that K.S.A. 41-715, which prohibits the dispensing of alcoholic liquors to certain classes of persons, was intended by the legislature to regulate the sale of liquor and was not intended to impose civil liability. It concludes that K.S.A. 41-715, while imposing criminal penalties for a violation of the statute, is merely a portion of a comprehensive act to regulate the manufacture, sale and distribution of alcoholic beverages and, therefore, not a basis for negligence per se.

Does the majority suggest that such is true of all similar acts passed by the legislature or is it limited only to this act? Consider Chapter 8, "Automobiles and Other Vehicles," which is a comprehensive act to regulate the licensing, sale and use of automobiles. Is not the same true of Chapter 8 as is true of Chapter 41, that while it contains certain provisions for licensing, other sections provide criminal sanctions for violation of those sections? The majority would imply that an individual who, while driving an automobile, intentionally and illegally proceeded into a controlled intersection and struck another vehicle is not required to bear the responsibility for any damage caused.

The legislature did not create a civil cause of action in favor of those injured as a result of a violation of the traffic laws. Does this legislative silence mean that the legislature did not intend for such violations of the traffic laws to be interpreted to impose civil liability, that a violation of the traffic laws is not negligence per se because the legislature remained silent? Rarely does the legislature specifically create a civil cause of action in favor of those injured as a result of a violation of a law.

K.S.A. 41-715 is not a licensing statute enacted by the legislature to regulate who may sell liquor. Chapter 41 of the statutes,

which is entitled "Intoxicating Liquors and Beverages," contains several sections which regulate the issuance of a license. K.S.A. 41-715, however, does not appear in a licensing article of Chapter 41. It appears in Article 7, which is entitled "Certain Prohibited Acts and Penalties." A violator of 41-715 may, in addition to receiving a fine not to exceed $200.00, receive a sentence not to exceed 30 days or both a fine and imprisonment *in the discretion of the court.* Any person violating 41-715 is deemed guilty of a misdemeanor by the statute.

The majority is either failing to overrule prior case law or ignoring it. In *Arredondo v. Duckwall Stores,* Inc., 227 Kan. 842, 610 P.2d 1107 (1980), this court determined that for public safety reasons, K.S.A. 21-4209 prohibits minors, habitual drunkards, narcotics addicts and felons from obtaining explosives or detonating substances. It was the public policy of the act that the party whose conduct violates the act must bear the responsibility for the damage caused. The defendant, in violation of the statute, sold gunpowder to a sixteen-year-old boy who used the gunpowder to reload some shells. The boy was injured when his shotgun misfired. The minor predicated his successful action against the seller of the gunpowder upon the theory that actionable negligence occurs when one breaches a duty imposed by a criminal statute and the breach results in an injury of the type intended to be prevented.

K.S.A. 41-715 forbids the sale of alcoholic liquor to a minor, any person who is incapacitated or any person who is physically or mentally incapacitated by the consumption of liquor. The statute establishes a criminal penalty for such sales. The purpose of 41-715 is to prevent the sale of alcoholic beverages to those individuals who are unlikely to be able to handle alcohol. These *individuals not only need protection from their own acts,* but society needs protection from them.

Are we required to take legislative silence as to civil liability for alcohol vendors who violate a statute as an expression of legislative intent? Why has the majority suddenly determined that legislative silence is action? Prior to the legislature's repeal of the dram shop act in G.S. 1949, 41-1106, the legislature knew that this court had stated that where there is a breach of a duty imposed by law and injury occurs as a result of the breach, the injured party is entitled to compensation. If the legislature

wishes to exempt a specific class of violators from liability for damages which they cause by their negligence, then the legislature should speak. The court should not legislate an exemption. There is no more persuasive evidence of the legislature's intention than a statute undertaken by the legislature to give expression to that intention. Where legislative enactments in the past have contained no express provision that their violation shall result in tort liability, and no implication to that effect, this court has adopted the requirements of that enactment as a standard of conduct necessary to protect certain individuals or society as a whole.

Section 18 of the Bill of Rights of the Constitution of the State of Kansas provides that all persons who suffer injuries to their person, reputation or property have a remedy by due course of law. In addition to our constitution, the legislature is aware of the principle of negligence law that every person is under a duty to avoid creating situations which impose an unreasonable risk of harm to others. Many times we have stated that a breach of a duty imposed by law or ordinance constitutes negligence per se and where injury occurs as a result of the breach, the injured party is entitled to compensation. Cognizant of our past actions, the legislature may well consider that when a judge-made common-law rule has become obsolete, anachronistic and oppressive, the court is responsible for change.

The majority states that the issue presented is whether this court should judicially enact a "dram shop" law imposing civil liability upon liquor vendors who violate 41-715. The real issue is whether this court should follow our previous case law which determined that public policy requires, where a party's conduct violates a penal statute, that party must bear the responsibility for the damage caused as a result of the violation.

A statute is an expression of policy arising out of specific situations and addressed to the attainment of a particular aim of the legislature. The majority should not rewrite the statute. It should neither enlarge it nor contract it. The majority should take the statute as it finds it. This it has failed to do.

PRAGER and MILLER, JJ., join in the foregoing concurring and dissenting opinion.

APPENDIX

Following is a brief summary of the present status of the civil liability of liquor vendors in all jurisdictions.

1. ALABAMA Dram shop act (Ala. Code § 6-5-71 [1975]). No common-law vendor liability. *DeLoach v. Mayer Elec. Supply Co.*, 378 So.2d 733 (Ala. 1979).

2. ALASKA No statutory vendor liability. Common-law liability. *Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981); and *Morris v. Farley Enterprises, Inc.,* 661 P.2d 167 (Alaska 1983).

3. ARIZONA No statutory vendor liability. Common-law liability. *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983); and *Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213 (1983), overruling earlier Arizona cases adhering to nonliability rule.

4. ARKANSAS No statutory vendor liability. No common-law liability. *Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965).

5. CALIFORNIA Prevailing common-law vendor liability for injury or damage resulting from intoxication abrogated in 1978 by Cal. Bus. & Prof. Code § 25602 (West 1985 Supp.) and Cal. Civ. Code § 1714 (West 1985).

6. COLORADO No statutory vendor liability. Common-law liability. *Kerby v. Flamingo Club,* 35 Colo. App. 127, 532 P.2d 975 (1974).

7. CONNECTICUT Dram shop act (Conn. Gen. Stat. § 30-102 [1985]). No common-law vendor liability. *Nelson v. Steffens,* 170 Conn. 356, 365 A.2d 1174 (1976); and *Slicer v. Quigley,* 180 Conn. 252, 429 A.2d 855 (1980).

8. DELAWARE No statutory vendor liability. No common-law liability. *Wright v. Moffitt,* 437 A.2d 554 (Del. 1981).

9. DISTRICT OF COLUMBIA No statutory vendor liability. Common-law liability. *Marusa v. District of Columbia,* 484 F.2d 828 (D.C. Cir. 1973).

10. FLORIDA Prevailing common-law vendor liability for injury or damage resulting from intoxication. *Davis v. Shiappacossee,* 155 So.2d 365 (Fla. 1963); and *Prevatt v. McClennan,* 201 So.2d 780 (Fla. Dist. App. 1967), limited in 1981 by Fla. Stat. § 768.125 (1983).

11. GEORGIA Dram shop act (Ga. Code § 3-3-22 [1982]). No common-law liability. *Keaton v. Kroger Co.,* 143 Ga. App. 23, 237 S.E.2d 443 (1977).

12. HAWAII No statutory vendor liability. Common-law liability. *Ono v. Applegate*, 62 Hawaii 131, 612 P.2d 533 (1980).
13. IDAHO No statutory vendor liability. Common-law liability. *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), overruling earlier Idaho case adhering to nonliability rule.
14. ILLINOIS Dram shop act (Ill. Stat. Ann. ch. 43, ¶ 135 [Smith-Hurd 1984 Supp.]). No common-law vendor liability. *Demchuk v. Duplancich*, 92 Ill. 2d 1, 440 N.E.2d 112 (1982); and *Thompson v. Trickle*, 114 Ill. App. 3d 930, 449 N.E.2d 910 (1983).
15. INDIANA No statutory vendor liability. Common-law liability. *Elder v. Fisher*, 247 Ind. 598, 217 N.E.2d 847 (1966).
16. IOWA Dram shop act (Iowa Code Ann. § 123.92 [West 1984 Supp.]). Common-law vendor liability. *Haafke v. Mitchell*, 347 N.W.2d 381 (Iowa 1984).
17. KANSAS No statutory vendor liability. No common-law liability.
18. KENTUCKY No statutory vendor liability. Common-law liability. *Pike v. George*, 434 S.W.2d 626 (Ky. 1968).
19. LOUISIANA No statutory vendor liability. Common-law liability. *Thrasher v. Leggett*, 373 So.2d 494 (La. 1979).
20. MAINE Dram shop act (Me. Rev. Stat. Ann. tit. 17, § 2002 [1983]). Status of common-law liability not confirmed.
21. MARYLAND No statutory vendor liability. No common-law liability. *Felder v. Butler*, 292 Md. 174, 438 A.2d 494 (1981); and *Fisher v. O'Connor's, Inc.*, 53 Md. App. 338, 452 A.2d 1313 (1982).
22. MASSACHUSETTS No statutory vendor liability. Common-law liability. *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968); and *Michnik-Zilberman v. Gordon's Liquor, Inc.*, 390 Mass. 6, 453 N.E.2d 430 (1983).
23. MICHIGAN Dram shop act (Mich. Stat. Ann. § 18.993 [Callaghan 1984 Supp.]). Common-law vendor liability. *Thaut v. Finley*, 50 Mich. App. 611, 213 N.W.2d 820 (1973).
24. MINNESOTA Dram shop act (Minn. Stat. § 340.95 [1984]). Common-law liability. *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973). Recently, Minnesota Supreme Court refused to extend liability to a social host. *Holmquist v. Miller*, No. C7-83-1919 (5/3/85).
25. MISSISSIPPI No statutory vendor liability. Common-law

liability. *Munford, Inc. v. Peterson,* 368 So.2d 213 (Miss. 1979).

26. MISSOURI No statutory vendor liability. Common-law liability. *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo. App. 1980); and *Carver v. Schafer,* 647 S.W.2d 570 (Mo. App. 1983).

27. MONTANA No statutory vendor liability. No common-law liability. *Runge v. Watts,* 180 Mont. 91, 589 P.2d 145 (1979); *Folda v. City of Bozeman,* 177 Mont. 537, 582 P.2d 767 (1978); and *Swartzenberger v. Billings Labor Temple Assn.,* 179 Mont. 145, 586 P.2d 712 (1978). But see *Deeds v. United States,* 306 F.Supp. 348 (D.Mont. 1969).

28. NEBRASKA No statutory vendor liability. No common-law liability. *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976).

29. NEVADA No statutory vendor liability. No common-law liability. *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (1969).

30. NEW HAMPSHIRE No statutory vendor liability. Common-law liability. *Ramsey v. Anctil,* 106 N.H. 375, 211 A.2d 900 (1965).

31. NEW JERSEY No statutory vendor liability. Common-law liability established in *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959), recently extended to social hosts, *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984).

32. NEW MEXICO No statutory vendor liability. Common-law liability. *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982); *MRC Properties, Inc. v. Gries,* 98 N.M. 710, 652 P.2d 732 (1982); and *Porter v. Ortiz,* 100 N.M. 58, 665 P.2d 1149 (Ct. App. 1983), overruling earlier New Mexico cases adhering to nonliability rule.

33. NEW YORK Dram shop act (N.Y. Gen. Oblig. Law § 11-101 [McKinney 1984 Supp.]). Common-law liability. *Berkeley v. Park,* 47 Misc.2d 381, 262 N.Y.S.2d 290 (1965).

34. NORTH CAROLINA Dram shop act (N.C. Gen. Stat. § 18B-121 *et seq.* [1983]). Common-law liability. *Hutchens v. Hankins,* 63 N.C.App. 1, 303 S.E.2d 584, *rev. denied,* 309 N.C. 191 (1983).

35. NORTH DAKOTA Dram shop act (N.D. Cent. Code § 5-01-06 [1983 Supp.]). No common-law liability. *Thoring v. Bottonsek,* 350 N.W.2d 586 (N.D. 1984).

36. OHIO Dram shop act (Ohio Rev. Code Ann. § 4399.01 [Page 1982]). Common-law vendor liability. *Mason v. Roberts*, 33 Ohio St.2d 29, 294 N.E.2d 884 (1973).
37. OKLAHOMA Has not ruled on subject.
38. OREGON Prevailing common-law vendor liability. *Campbell v. Carpenter*, 279 Or. 237, 566 P.2d 893 (1977) limited in 1979 by Or. Rev. Stat. § 30.950 *et seq.* (1983).
39. PENNSYLVANIA No statutory vendor liability. Common-law liability. *Jardine v. Upper Darby Lodge No. 1973*, 413 Pa. 626, 198 A.2d 550 (1964).
40. RHODE ISLAND Dram shop act (R.I. Gen. Laws § 3-11-1 [1976]). Status of common-law not confirmed.
41. SOUTH CAROLINA Has not ruled on subject.
42. SOUTH DAKOTA No statutory vendor liability. Common-law liability. *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D. 1982), overruling earlier South Dakota case adhering to nonliability rule.
43. TENNESSEE No statutory vendor liability. Common-law liability. *Mitchell v. Ketner*, 54 Tenn. App. 656, 393 S.W.2d 755 (1964).
44. TEXAS Has not ruled on subject.
45. UTAH Dram shop act (Utah Code Ann. § 32-11-1 [1983 Supp.]). Status of common-law liability not confirmed.
46. VERMONT Has not ruled on subject.
47. VIRGINIA Has not ruled on subject.
48. WASHINGTON No statutory vendor liability. Common-law liability. See, *e.g., Callan v. O'Neil*, 20 Wash. App. 32, 578 P.2d 890 (1978); and *Halligan v. Pupo*, 37 Wash. App. 84, 678 P.2d 1295 (1984).
49. WISCONSIN No statutory vendor liability. Common-law liability. *Sorensen v. Jarvis*, 119 Wis.2d 627, 350 N.W.2d 108 (1984), overruling earlier Wisconsin cases adhering to nonliability rule. *Koback v. Crook*, 123 Wis. 2d ____, 366 N.W. 2d 857 (1985), Wisconsin Supreme Court imposes liability on social host who served liquor to a minor.
50. WEST VIRGINIA Has not ruled on subject.
51. WYOMING No statutory vendor liability. Common-law liability. *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo. 1983), overruling earlier Wyoming cases adhering to nonliability rule.