NATIONAL GYPSUM COMPANY,
Plaintiff,

v.

DALEMARK INDUSTRIES,
INC., Defendant.

No. 89–1525–C.

United States District Court,
D. Kansas.

Nov. 12, 1991.

Joseph R. Colantuono, Polsinelli, White, Vardeman & Shalton, Overland Park, Kan., for plaintiff.

Susan Selvidge, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Dalemark, Inc.

Martin W. Bauer, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for American Ink Jet.

MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on defendant Dalemark Industries' motion for leave to file a third party complaint against American Ink Jet Corporation ("AIJ"), a former defendant to the case. AIJ's motion to dismiss for lack of personal jurisdiction was granted by the court's order filed September 20, 1991. The parties, nevertheless, proceeded with taking the deposition of AIJ's expert witness, Dennis Sardella, on September 25, 1991. Based upon testi-

mony elicited in that deposition, Dalemark Industries, Inc. ("Dalemark") now seeks leave to file a third party action in tort against AIJ. Specifically, Dalemark alleges AIJ negligently and intentionally misrepresented that it could chemically analyze a sample of Dalemark's # 607 ink and identically reproduce the ink. AIJ denies any misrepresentation, contends the motion is untimely, and asserts the lack of personal jurisdiction.

Giving the advantage of all disputed facts to Dalemark, the relevant facts to this motion begin in 1986 when Michael Andreottola, president of AIJ, was contacted by a Dalemark representative about developing a particular ink for Dalemark. Later in 1986, Dalemark contacted Andreottola about duplicating and producing # 607 ink. Based on the statements and actions of Andreottola, Dalemark's principal believed AIJ had the knowledge and means to analyze the # 607 ink and duplicate it for Dalemark. Since Dalemark did not manufacture the # 607 ink and did not have a formula for it, a sample was sent to AIJ for analysis and duplication sometime in February or March of 1987. After testing the sample for its physical parameters on viscosity and surface tension, Andreottola sent the ink sample to Dennis Sardella, a professor of chemistry at Boston College University, to identify the vehicle or liquid part of the ink.

On July 16, 1990, in response to Dalemark's interrogatories, AIJ stated that Dr. Sardella tested and analyzed the # 607 ink in February 1987 and found its composition to be: "20% Diethylene Glycol; 40% Ethylene Glycol Butyl Ether; 40% Propylene Glycol Monomethyl Ether; and 5% Jetine Black Dye." At his deposition on September 25, 1991, Dr. Sardella testified that he did not test the dyes found in the sample and did not determine the identity or nature of the dyes. He further explained that analyzing dyes is a difficult task and is not an area in which he considers himself to be a competent expert. Dalemark's

counsel aver that Dr. Sardella's testimony was the first they learned of AIJ's failure to test or determine the dyes and AIJ's lack of skill or means for this analysis. Consequently, Dalemark believes their delay in bringing the third party complaint is entirely justified. AIJ disagrees. Because the court finds the issue of personal jurisdiction dispositive of the motion, the court will not engage in balancing the equities represented in the concepts of delay, judicial economy and prejudice.

A federal court must have personal jurisdiction over the third-party defendant before the third-party claim can be adjudicated. 6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1445 at 344 (1990) (cited in *Pecarsky v. Marina Associates,* 107 F.R.D. 107, 109 (D.N.J.1985)). The lack of personal jurisdiction over the proposed third-party defendant is cause for denying a Rule 14 motion. 6 Charles A. Wright, et al., *supra* at 345–46. Rather than repeating the various standards and general law on personal jurisdiction set out in its earlier order, the court simply incorporates it by reference.

Dalemark asserts personal jurisdiction over AIJ is available under the Kansas long-arm statute provision for "commission of a tortious act within the state." K.S.A. 60–308(b)(2). From the interpretation that a tortious act is not complete until the injury has occurred, the Kansas Supreme Court has reasoned that "under the provisions of K.S.A. 60–308(b)(2), it is possible to bring suit in Kansas to recover damages for injuries occurring in this state which resulted from negligent conduct outside the state." *Ling v. Jan's Liquors,* 237 Kan. 629, 633, 703 P.2d 731 (1985). Dalemark contends a tortious injury was suffered in Kansas as a result of AIJ's fraudulent representation. The injury identified by Dalemark is its liability to National Gypsum Company ("NGC") for the damages to NGC's wallboard when the ink bled through tape, paint, and joint compound.[1]

---

1. In its proposed third party complaint, Dalemark alleges the injury is its possible liability to NGC for damages claimed to be not less that $151,591.84. In its memorandum filed in support of its motion, Dalemark took the position that the injury from AIJ's fraudulent representa-

Dalemark's payment for any judgment and the loss of any sales would be felt where Dalemark existed and conducted its business. That place is New Jersey, not Kansas.

For the most part, courts have exercised jurisdiction under K.S.A. 60–308(b)(2) only when the plaintiff or complaining party sustained injuries in Kansas. In *Ling*, the plaintiff's injuries were caused by an automobile accident in Kansas. 237 Kan. at 633, 703 P.2d 731. In *J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246 (D.Kan.1978), the plaintiff was a Kansas resident who suffered the economic consequences in Kansas from relying on the fraudulent representations made by a nonresident. The same holds true for a number of cases involving K.S.A. 60–308(b)(2), that is, the plaintiff or complaining party sustained its injuries in Kansas thereby sustaining personal jurisdiction over the nonresident defendant. *See, e.g. Taylor v. Phelan*, 912 F.2d 429 (10th Cir.1990) (Defendants' negligence resulted in plaintiff's injuries in Kansas), *cert. denied,* — U.S. —, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991); *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 727 (10th Cir.1984) (Fraud in inducement to contract injured the plaintiffs who were Kansas residents); *Slawson v. Hair*, 716 F.Supp. 1373 (D.Kan.1989) (Plaintiff's injuries were sustained at its principal place of business in Kansas); *Corinthian Mortg. Corp. v. First Sec. Mortg. Co.*, 716 F.Supp. 527 (D.Kan.1989) (plaintiff corporation was injured by defendant's misrepresentation at plaintiff's principal place of business in Kansas and not in Oklahoma where the deal was to be closed and performed).

■ In what could be read as an aberrant decision, the Kansas Supreme Court summarily applied the (b)(2) provision where the only injury ostensibly sustained in Kansas was to an identified partnership who was not even a party to the suit. *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 778, 740 P.2d 1089 (1987). The court, however, did not directly say that a plaintiff could obtain personal jurisdiction over a defendant on the basis of injuries that were not sustained by plaintiff and not recoverable by plaintiff. Indeed, one of the plaintiffs was actually a general partner in the Kansas partnership, and to that extent, the nonresident plaintiff's interest in the Kansas partnership was injured in Kansas. This court, therefore, does not read *Volt Delta Resources* as extending (b)(2) jurisdiction over a defendant whose tortious actions did not cause an injury to a plaintiff in Kansas. A contrary reading would not be consonant with the very basic premise that the contacts between a defendant and the forum are judged in light of the plaintiff's claim. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

Dalemark mistakenly relies on the *Keeton* decision to support its position. In *Keeton*, the plaintiff was a New York resident who brought a libel suit in New Hampshire against Hustler Magazine, an Ohio corporation operating principally in California. The only connection between New Hampshire and the plaintiff or defendant was the plaintiff's assistance in producing the defendant's magazine and the sale and circulation of that magazine in New Hampshire. The Court reversed the First Circuit and said personal jurisdiction existed because of defendant's regular circulation of its magazine in New Hampshire. 465 U.S. at 773–74, 104 S.Ct. at 1477–78. The Court observed that the injuries or the harm to reputation recoverable under the tort of libel occurs wherever the libelous material is published or distribut-

---

tion was the damage to NGC's property in Kansas. In its reply brief, Dalemark explained the injury was the damage caused to NGC's wallboard and Dalemark's loss of NGC as a customer. The court does not read these separate damage theories as simply different ways of saying the same thing. Besides being the only damage theory actually pleaded in the proposed complaint, Dalemark's liability to NGC, along with the loss of NGC as a customer, appears to be the only damages that Dalemark, not NGC, suffered as a result of Dalemark's reliance on AIJ's alleged misrepresentation. Dalemark does not explain how it can recover directly for NGC's injuries and, consequently, how it can assert NGC's injuries as the basis for obtaining personal jurisdiction over AIJ on its third party complaint.

**150**

ed. 465 U.S. at 776–77, 104 S.Ct. at 1479. Consequently, New Hampshire had a significant interest in redressing the plaintiff's injuries occurring there regardless of the fact that plaintiff was not a resident of New Hampshire. *Id.*

Unlike the plaintiff in *Keeton,* Dalemark has not sustained any injuries in Kansas. The *cause* of Dalemark's alleged liability may have occurred in Kansas when the defective ink was used by NGC in its wallboard manufacturing process and will occur in Kansas if NGC is successful in obtaining a judgment in a Kansas court against Dalemark. Nonetheless, the effect of AIJ's actions are felt in New Jersey where Dalemark negotiated and relied on AIJ's representations in contracting with NGC and where Dalemark will bear the economic consequences for any liability to NGC. *See Seitter v. Schoenfeld,* 678 F.Supp. 831, 836 (D.Kan.1988). The last events causing injury to Dalemark are its payment of any judgment to NGC and its lost sales to NGC. Both events occur in New Jersey rather than Kansas.

■ Much of the due process analysis discussed in the court's earlier order is fully applicable here and is simply incorporated in the interest of brevity. AIJ could not reasonably foresee that by representing its skills and abilities for analyzing and duplicating ink to a New Jersey customer that it could be haled into any forum in which the customer later decided to distribute the ink. The court cannot constitutionally exercise personal jurisdiction over AIJ on the basis of Dalemark's proposed third party complaint.

IT IS THEREFORE ORDERED that Dalemark's motion for leave to file third party complaint pursuant to Fed.R.Civ.P. 14(a) (Dk. 144) is denied.

IT IS FURTHER ORDERED that AIJ's request for attorney's fees pursuant to Fed.R.Civ.P. 11 (Dk. 146) is denied as Dalemark's motion was adequately grounded in law and fact and was not interposed for an improper purpose.